**Salem**

DAN RIVER, INC.

v.

REX G. TURNER

No. 0422-86-3

Decided January 6, 1987

COUNSEL

Michael P. Regan (James A. Harper, Jr., Gregory B. Robertson, Hunton & Williams, on briefs), for appellant.

Michael G. Turner, for appellee.

OPINION

MOON, J. — Dan River, Inc., appeals a decision of the Industrial Commission awarding medical and disability payments to Rex G. Turner based upon an injury received to his left knee in an industrial accident on July 3, 1984. Dan River contends: (1) that there was insufficient evidence to show that a Baker's cyst found on the injured knee was proximately caused by the accident; and (2) that the Commission erred in determining that treatment received by the claimant from a non-treating physician was compensable. We affirm the award because it is supported by credible evidence, based upon the finding that the stipulated industrial accident of July 3, 1984, was the proximate cause of internal derangement of the claimant's left knee which included either *initiation* or *acceleration* of a torn meniscus, Grade I chondromalacia patella, Grade II chondromalacia of the medial femoral condyle, and medial patella plica.

Findings of fact made by the Industrial Commission are binding upon appeal when supported by credible evidence. *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411, 302 S.E.2d 507, 510-

11 (1983); *Russell Loungewear v. Gray*, 2 Va. App. 90, 92, 341 S.E.2d 824, 825 (1986). In addition, we will construe the evidence in the light most favorable to the party prevailing below. *Crisp v. Brown's Tysons Corner Dodge, Inc.*, 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).

Rex G. Turner, claimant, while working for Dan River, Inc., on July 3, 1984, was struck in the left knee by hydraulic pullers. He started to fall but was caught by his supervisor before he hit the floor. Dan River stipulated that claimant suffered an industrial accident. Claimant went to the Dan River Clinic later that day. The nurse on duty took an X-ray of the knee. The accident report stated: "Abrasion left knee with slight discoloration. Contusion anterior right thigh and slight abrasion with discoloration . . . . Left knee, negative for fracture or dislocation." Claimant was told to use an ice pack and soak his leg, among other things, and return in two days if necessary.

Claimant first saw Dr. Sizer at the Dan River Clinic on July 16, 1984, complaining of soreness and a knot behind the knee. Dr. Sizer noted the existence of a "slight cystic feeling mass popliteal area freely movable" in the knee. Claimant returned on July 18, 1984, complaining of numbness and "muscles drawing." Dr. Sizer referred claimant to Dr. Gross, an orthopedic surgeon. Dr. Gross examined claimant on July 18, 1984, and diagnosed a "Baker's cyst left knee; contusion, left knee." According to Dr. Gross' office notes, Dan River disclaimed responsibility for treating the cyst at that time. Dr. Gross's report of July 26, 1984, states:

My x-rays and examination of this patient on July 18, 1984 showed a large Baker's cyst in the popliteal fossa of his left knee. I sent him to the hospital for an arthrogram on July 25, 1984 and this is reported as normal.

I saw the patient on July 25, 1984 and aspirated the cyst and he is to return in two weeks for further follow-up.

The Baker's cyst was pre-existing, but was probably aggravated by his injury on July 3, 1984.

A note of August 8, 1984, by Dr. Gross, indicates that the cyst had recurred and the claimant was complaining of aching in his

legs. On August 29, 1984, Dr. Gross noted: "Cyst still present. Knee doing well. Plan: release for knee injury, no permanent disability, return for cyst prn."[1]

Claimant sought treatment at Duke University Medical Center on September 4, 1984, and was examined by Dr. William T. Hardaker, Jr., an orthopedic surgeon. Dr. Hardaker noted that claimant had a Baker's cyst, left knee, with a history of blunt trauma and that the claimant had a possible degenerative meniscal tear. He returned claimant to the care of Dr. Gross. Claimant again returned to Dr. Hardaker and underwent arthroscopic knee surgery on December 4, 1984. Dr. Hardaker observed a degenerative flap tear of the medial meniscus of the left knee. Dr. Hardaker stated in his depositions that the condition of claimant's knee was consistent with an industrial accident.

Claimant was discharged ambulatory on December 6, 1984. He returned to work part-time at Dan River on December 31, 1984, and full-time on January 24, 1985.

The deputy commissioner denied compensation but the full Commission reversed, awarding temporary total disability benefits from December 4-30, 1984, for February 19, 1985, and April 25, 1985, and awarding temporary partial disability benefits from December 31, 1984, through January 23, 1985. Claimant also received an award for 20% loss of the use of his left leg.

Dan River first contends the Industrial Commission erred in concluding that the Baker's cyst was proximately caused by the industrial accident of July 3, 1984. Dan River primarily relies upon the diagnoses of Dr. Sizer and Dr. Gross, both of whom stated that the Baker's cyst pre-existed the accident. Dr. Gross did state, however, that the cyst was probably aggravated by the injury received in the accident.

Substantial conflicting medical evidence was presented at the hearing before the deputy commissioner. Dr. W.E. Deyton, a radiologist who reviewed claimant's x-rays, stated that the cyst pre-existed the accident. Dr. Theodore E. Keats, a professor and chairman of the radiology department at the University of Virginia School of Medicine, reviewing the same x-rays, stated

---

[1] P.r.n. is defined by Dorland's Illustrated Medical Dictionary (26th ed. 1985) as "according as circumstances may require."

that a reliable diagnosis could not be made of a pre-existing Baker's cyst. The Industrial Commission stated in its opinion:

> Upon careful consideration of the many medical reports, including the conflicting medical opinions with respect to the existence or nonexistence of a Baker's cyst in the claimant's left knee on July 3, 1984, the date of accident, we find that the medical evidence preponderates in establishing that the stipulated industrial accident of July 3, 1984 was the proximate cause of internal derangement of the claimant's left knee.

It further stated: "In view of this conflict, and in consideration of the other medical evidence available in this record, we are not persuaded that the claimant had a Baker's cyst any sooner than ten days subsequent to the date of the stipulated industrial accident."

■ As this court stated in *Commonwealth v. Powell*, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986): "[I]t is fundamental that a finding of fact made by the Commission is conclusive and binding upon this court on review. A question raised by conflicting medical opinion is a question of fact." *Id.* Therefore, we conclude that the Commission did not err in finding that the Baker's cyst was proximately caused by the accident of July 3, 1984, because that finding is supported by credible medical evidence.

■ Even if we assume the Baker's cyst pre-existed the accident, Dr. Gross, to whom claimant was referred by the company physician, Dr. Sizer, stated that it was probably aggravated by the injury. In addition, the attending physician's report executed by Dr. Gross on July 18, 1984, stated that Dr. Gross diagnosed claimant as having a "Baker's cyst left knee; contusion, left knee." In response to the question, "Is diagnosed condition due to occurrence described in Item 11 [Employee's account of the injury]," Dr. Gross stated, "Yes."

> When an injury sustained in an industrial accident accelerates or aggravates a preexisting condition, death or disability therefrom is compensable under the Workers' Compensation Act.

*Russell Loungewear v. Gray*, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986) (quoting *Ohio Valley Construction Co. v. Jackson*, 230 Va. 56, 58, 334 S.E.2d 554, 555 (1985)). Therefore, claimant's condition would still be compensable, based on Dr. Gross's report that the cyst was aggravated by the injury of July 3, 1984.

Dan River next contends that the treatments claimant received from Dr. Hardaker were unauthorized, and, thus, noncompensable. It argues, relying on Code § 65.1-88, that a claimant cannot refuse preferred medical service merely because he is dissatisfied with the treatment and seek other medical attention on his own. "The unjustified refusal of the employee to accept such medical service . . . when provided by the employer shall bar the employee from further compensation until such refusal ceases. . . ." Code § 65.1-88.

As this court stated in *Davis v. Brown & Williamson Tobacco Co.*, 3 Va. App. 123, 128, 348 S.E.2d 420, 422 (1986):

> In considering whether an employee has refused medical services, it is imperative that the Commission, and the Court, focus upon the purpose of the legislature in requiring the employer to furnish and obligating the employee to receive medical attention.

> The requirement has as its obvious dual purpose the placing of the cost of such medical attention upon the employer and *the restoring of the employee's health* so that he may return to useful employment as soon as possible. The furnishing and receiving of such medical attention insures, therefore, to the benefit of the employee and . . . to the employer as well.

*Id.* (quoting *Immer & Co. v. Brosnahan*, 207 Va. 720, 724, 152 S.E.2d 254, 257 (1967) (emphasis added in *Davis*)).

In the present case, Dr. Gross's office notes of August 29, 1984, stated: "Cyst still present. Knee doing well. Plan: release for knee injury no permanent disability, return for cyst prn." Claimant argues that since Dr. Gross released him from his care, advising him to return "as circumstances may require," he was free to seek other medical attention because he was still suffering from his in-

juries, as Dr. Hardaker later confirmed.

> While an employee cannot refuse the medical services offered by a treating physician without forfeiting his compensation and medical benefits, it is contrary to the purpose of the Act to penalize an employee for seeking additional, more aggressive and perhaps better medical care to correct injuries received in an industrial accident.

*Davis*, 3 Va. App. at 129, 348 S.E.2d at 423. There is no evidence in the record to show that claimant refused to follow the treatment prescribed by Dr. Gross, and, therefore, we cannot conclude, based on the facts before us, that claimant's benefits should be discontinued for seeking additional medical attention.

Furthermore, the employer told claimant that he had recovered from the industrial accident, that he only needed treatment for the Baker's cyst, and that it was not responsible for any treatment for the cyst. The claimant was under no duty to see the employer's doctor for treatment for which the employer disclaimed responsibility. The claimant did not refuse medical teatment provided by the employer; rather the employer, in effect, refused to provide further medical treatment to the claimant. *See Davis*, 3 Va. App. at 129, 348 S.E.2d at 423.

The Industrial Commission's award, therefore, is affirmed.

*Affirmed.*

Koontz, C.J., and Hodges, J., concurred.