**Alexandria**

FIRST FEDERAL SAVINGS & LOAN
ASSOCIATION, et al.

v.

DORIS M. GRYDER

No. 1277-88-4

Decided September 12, 1989

COUNSEL

Benjamin J. Trichilo (Lewis, Tydings, Bryan, Trichilo & Stock, P.C., on brief), for appellant.

A. Thomas Lane (Barry A. Stiefel, Ashcraft & Gerel, on brief), for appellee.

OPINION

DUFF, J.—This appeal by the employer and carrier presents the issue of whether the claimant sustained an industrial accident, and if so, whether it arose out of the employment. The Industrial Commission, affirming an award of the deputy commissioner, held that Ms. Gryder had sustained an injury by accident arising out of and in the course of her employment on August 29, 1986, which materially aggravated a pre-existing disc condition incurred as a result of a previous industrial accident in 1984. The employer and carrier contend that there was no new injury by accident on August 29, 1986, and that Ms. Gryder's disability subsequent thereto was the result of continuing back problems, all stemming from the 1984 injury. Claimant has assigned as cross-error that the commission erred in not finding that her psychological disability was the result of her injury of August 29, 1986. From our review of the record, the briefs filed and the able arguments presented, we find credible evidence in support of the commission's award and affirm.

Under fundamental principles, we view the evidence in the light most favorable to the claimant, the prevailing party before the commission. *Dan River, Inc. v. Turner*, 3 Va. App. 592, 593, 352 S.E.2d 18, 19 (1987).

On February 21, 1984, Doris M. Gryder was employed as vice-president and branch manager of First Federal Savings & Loan Association. On that date she sustained a compensable injury by accident when she tripped and fell as the result of a torn carpet. Dr. Norman A. Marcus, her attending orthopedic surgeon, made a tentative diagnosis of "probable L4-5 herniated disc on the right." She lost approximately two weeks from work and testified that she "got along pretty good" thereafter. She conceded that she would periodically have "a little bit of pain with my back," but

she was able to live with it and did not seek any medical attention for the next two years. She continued to work regularly, missing time only "once or twice."

On August 26, 1986, the claimant was working at her desk when the telephone rang. As she answered the telephone, she twisted and felt a sharp pain. It subsided, but aggravated her for the next day or two.

On August 29, 1986, Ms. Gryder was sent by her employer to the Fair City Branch to fill in as the acting teller manager. During the morning hours, around 11:30 a.m., she was seated on a teller stool, which had a rim around the lower part of the stool approximately 20 to 24 inches above the floor. She was wearing high heel shoes, with the heels hooked behind the rim. She testified that the telephone rang and she shifted forward to grab a pencil and answer the call. While shifting to her left to answer the telephone, her heel became caught in the rim. She jerked, or twisted, to the left so that she would not fall and when doing so, felt an excruciating pain in her back. She screamed loudly and began crying. A co-worker took Ms. Gryder to a back room and from there, she was transported to Commonwealth Hospital.

Claimant came under the orthopedic care of Dr. Albert Casabona. He diagnosed her complaints as a severe acute lumbosacral sprain, probably discogenic in origin, and most likely related to the February 1984 injury. She was hospitalized from September 3 to September 13, 1986 for physical therapy traction and testing. A CAT scan revealed a definite abnormality at the L5-S1 level, suggestive of a disc protrusion. Dr. Casabona ordered an MRI, which revealed a degenerated and herniated disc at the L5-S1 level. He sought consultation by Dr. William Gazale, an orthopedic associate. Dr. Gazale opined that the incidents of August, 1986, described by the claimant, were the precipitating cause of her new back problem, which possibly was an aggravation of a pre-existing condition.

In conjunction with this treatment, Ms. Gryder sought a second opinion about surgery from Dr. Brent Ain. His records show a history of the February 21, 1984 injury, and a history of an August 26 1986 incident of twisting to reach for a telephone, and an August 29, 1986 incident of twisting to reach for a work-related document. He diagnosed a myoligamentous strain of the

lumbar spine, noting that the CAT finding was not conclusive. On December 5, 1987, he reported that he could not absolutely connect each of the accidents and how they impacted on her condition, but by history Dr. Ain felt that the August, 1986 injury seemed to precipitate Ms. Gryder's new complaints.

Dr. Gazale continued to treat the claimant, and on December 8, 1986, he released her to return to light duty. She returned to work on December 9, 1986 as a branch manager at Fair City. This assignment represented a demotion, as she previously had been in charge of ten branches and had been provided with the use of an automobile. However, the commission found, and the record contains evidence that the decision to reassign Ms. Gryder to this new job had been made prior to the August, 1986 injury and had been brought to her attention.

(2) The central issue presented is whether Ms. Gryder's symptoms following the August, 1986 incidents were the result of a new injury or merely an aggravation of injuries received in the February, 1984 accident. To be an aggravation, however, the exacerbation of symptoms must occur under circumstances that would not amount to a new compensable accident. *Leonard v. Arnold*, 218 Va. 210, 214, 237 S.E.2d 97, 100 (1977). In *Ohio Valley Construction Co. v. Jackson*, 230 Va. 56, 334 S.E.2d 554 (1985), our Supreme Court held that an injury which aggravates or accelerates a pre-existing condition is compensable. The claimant is responsible for proving the necessary elements of "an injury by accident arising out of . . ." employment .

Thus, aggravation of an old injury or a pre-existing condition is not, per se, tantamount to a "new injury." To be a "new injury," the incident giving rise to the aggravation must, in itself, satisfy each of the requirements for an "injury by accident arising out of. . . the employment." Appellants argue that the incidents occurring in August, 1986 do not qualify as an accidental injury and did not arise out of the claimant's employment. We agree that the incident of August 26, 1986, standing alone, would not be a new "accident arising out of" employment. However, the commission held that the incident described by the claimant on August 29, 1986 was an injury by accident arising out of and in the course of employment. It also held that this injury materially aggravated a pre-existing disc condition incurred as a result of the 1984 accident. The commission recognized that the 1984 accident played a

part in claimant's condition from August 29, 1986, onward, but found that the medical record showed that the disability was "not just caused by natural progression of the 1984 condition."

Appellants rely on *Central State Hospital v. Wiggers*, 230 Va. 157, 335 S.E.2d 257 (1985), *UPS v. Fetterman*, 230 Va. 257, 336 S.E.2d 892 (1985), and *Richmond Memorial Hospital v. Crane*, 222 Va. 283, 278 S.E.2d 877 (1981), and assert that everyday activities such as walking, tying shoes, and reaching for a telephone are not sufficiently work-related to be deemed to arise out of the employment.

In *Wiggers*, a clerk at the hospital arose from her desk and walked ten steps to an adjoining office to answer the telephone. Just as she reached for the telephone, her right ankle twisted. She did not slip, twist, stumble or fall, but simply twisted her ankle while walking normally. The Supreme Court entered final judgment for the employer, finding no causal connection between the work environment and the injury.

In *Crane*, a nurse stood up from a chair and started to walk, when she felt something snap in her lower right leg. There was no slip, twist or fall. Compensation was denied, as there was no showing that the work environment had in any way contributed to the injury.

In *Fetterman*, a driver was unloading packages when he noticed that one of his shoelaces was untied. As he raised his foot to the back of the truck and bent to tie his shoe, he felt an acute pain in his back. In reversing an award of compensation the Supreme Court observed that the "arising out of" test excludes "an injury that comes from a hazard to which the employee would have been equally exposed apart from the employment." *Id.* at 258, 336 S.E.2d at 893. Anyone who wears laced shoes must occasionally tie them.

Finally, in *County of Chesterfield v. Johnson*, 237 Va. 180, 376 S.E.2d 73 (1989), an employee needed to check a meter to see that it was working properly. When he turned around to go back to the equipment, his knee gave way and he fell to the floor. He did not slip, trip, stumble or take an awkward step when his knee gave way. The knee gave way before he fell. In reversing a panel of this Court, which had awarded compensation, the Supreme

Court again found no connection between the condition under which the work was performed and the injury.

In *Johnson*, the Court distinguished *Reserve Life Insurance Co. v. Hosey*, 208 Va. 568, 159 S.E.2d 633 (1968), in a manner which we believe is apropos to this case. In *Hosey*, the employee was making a door-to-door survey for her insurance company. She was walking up steps made of rocks and the vertical distance between each step was slightly higher than usual. As she negotiated the top step, her knee snapped. An award of compensation was upheld because there was something unusual about the steps on which the injury occurred. That fact formed the critical link between the condition of the workplace and the injury.

Turning to an analysis of this case, Ms. Gryder was required to work on a high teller's stool with a rim around it some 20-24 inches above the floor. She was wearing high heel shoes with the heels hooked behind the rims. As she reached to answer the telephone, her heel became caught in the rim. To keep from falling, she jerked or twisted to her left and experienced an immediate, excruciating pain. Unlike *Wiggers, Crane, Fetterman* and *Johnson*, Gryder experienced an unusual twist or jerk caused by an actual risk occasioned by her work environment. We agree with the observation of the deputy commissioner who heard the evidence that it was apparent to the rational mind that a causal connection existed between the conditions under which the work was required to be performed and the resulting injury. The contortion of the body, as described, is not a risk to which all persons are equally exposed. Phrased differently, the injury came from a hazard to which Ms. Gryder would not have been equally exposed apart from the conditions of employment.

The record discloses that at the hearing considerable emphasis was placed on claimant's credibility. However, the commission resolved that issue in the claimant's favor, and we are bound by such determination.

Finally, with respect to the assignment of cross-error by the claimant that the commission erred in failing to find her psychological disability to be a result of the August 29, 1986 injury, we affirm. Our review of the psychiatric reports shows that they do not establish any definite degree of causation between the accident and the treatment provided.

For these reasons the opinion of the commission is

*Affirmed.*

Baker, J., and Hodges, J., concurred.