COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Elder and Fitzpatrick
Argued at Richmond, Virginia

YOGURT ENTERPRISES AND
FIDELITY AND CASUALTY COMPANY
 OF NEW YORK
                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0396-95-2    JUDGE JOHANNA L. FITZPATRICK
                                         DECEMBER 29, 1995
DAPHNE E. WOHLFORD

        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Kathryn Spruill Lingle (Midkiff & Hiner,
            P.C., on brief), for appellants.

            Gerald G. Lutkenhaus for appellee.


      Yogurt Enterprises and its insurer Fidelity and Casualty
Company of New York (collectively referred to as employer) appeal
the commission's decision awarding benefits to Daphne Wohlford
(claimant).  Employer argues that the commission erred in finding
that:  (1) claimant suffered a new injury by accident on
September 23, 1993; (2) claimant's doctor did not release her to
light-duty work until September 7, 1994; and (3) claimant had no
obligation to market her residual capacity between September 7,
1994 and September 14, 1994.  We disagree and affirm the
commission.

                           **BACKGROUND**

      On December 10, 1990, claimant suffered a lumbar strain when
she lifted a case of yogurt while working for employer.  Claimant
was disabled until January 7, 1991, and employer paid benefits

---

      [*]Pursuant to Code § 17.116.010 this opinion is not
designated for publication.

under a memorandum of agreement approved by the commission.

Claimant suffered episodic recurrences of pain after the December 1990 injury. Then, on July 29, 1992, claimant injured her back in the same area when she lifted a box of yogurt. She was unable to work for a week, and employer paid without an award being entered. Claimant sought further treatment from Dr. William E. Nordt, III, on October 28, 1992, complaining of persistent low back pain. A magnetic resonance imaging study (MRI) conducted on November 2, 1992 revealed no evidence of disc herniation or spinal stenosis. Claimant sought additional treatment on March 10, 1993, and received an epidural steroid injection on March 17, 1993. On July 27, 1993, claimant visited Dr. Nordt and complained of continuing episodic back pain. Dr. Nordt ordered another MRI and a second epidural injection. Claimant was out of work on July 27 and 28, 1993.

On September 23, 1993, claimant suffered a third injury to her back when she lifted a tub of ice cream. She missed two weeks of work, and employer paid her salary. She returned to work, but employer terminated claimant's employment for unrelated reasons on November 18, 1993. Claimant made no effort to find other employment because she was still having back pain. On December 9, 1993, Dr. Nordt noted that claimant was "really no better with [physical therapy] and her epidural steroid injections." However, on February 28, 1994, claimant was making progress with physical therapy, and Dr. Nordt reported that she

2

was "still unable to work in any job requiring exertional duty." In several reports, Dr. Nordt characterized claimant's accidents in July 1992 and September 1993 as "reinjuries" of her back.

Claimant's back pain continued when she was unable to attend physical therapy because she could not afford it. On September 7, 1994, Dr. Nordt noted that "she cannot do any duty which requires heavy lifting as has been the case for the last six months." Employer submitted a light-duty job description to Dr. Nordt in September 1994, and he approved it on September 13, 1994. In a September 14, 1994 letter, Dr. Nordt indicated that, although he prohibited claimant from doing any "exertional duty" on February 28, 1994, "this was meant to permit certain activities. It was never clarified as to what she could and could not do until I received more specific information from rehabilitative services."

Claimant filed a claim for benefits based on the July 1992 and September 1993 injuries on December 27, 1993. At the September 14, 1994 hearing, claimant testified that Dr. Nordt never released her to work prior to reviewing the job description provided by rehabilitative services in September 1994.

The commission found that both the July 29, 1992 and September 23, 1993 injuries were "new injuries," and awarded claimant requested medical expenses for the July 1992 accident and medical expenses and compensation for the September 1993 accident. The commission also determined that claimant's doctor

3

did not release her to light-duty work until September 7, 1994, and that claimant had no obligation to market her residual capacity during the brief period between the date she was released to work on September 7, 1994 and the hearing on September 14, 1994.

## NEW INJURY OR AGGRAVATION OF PRIOR INJURY

Employer argues that claimant's July 1992 and September 1993 injuries were aggravations of her original injury on December 10, 1990, not new injuries by accident. Employer contends that the commission erred in attributing claimant's disability solely to her September 1993 accident and in not prorating the benefits between the December 1990, July 1992, and September 1993 accidents.

This Court reviews "the evidence in the light most favorable to the prevailing party." R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "Factual findings of the . . . [c]ommission will be upheld on appeal if supported by credible evidence." James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

"[A]ggravation of an old injury or a pre-existing condition is not, per se, tantamount to a 'new injury.' To be a 'new injury,' the incident giving rise to the aggravation must, in itself, satisfy each of the requirements for an 'injury by accident . . . .'" First Fed. Sav. & Loan Ass'n v. Gryder, 9 Va. App. 60, 63, 383 S.E.2d 755, 757-58 (1989). A new injury does

4

not "naturally flow from a progression, deterioration, or aggravation of the injury sustained in the original industrial accident." Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 99 (1977).

In Gryder, this Court upheld the commission's finding that the claimant "sustained an injury by accident arising out of and in the course of her employment . . ., which materially aggravated a pre-existing disc condition incurred as a result of a previous industrial accident." 9 Va. App. at 61, 383 S.E.2d at 756. The claimant first injured her back when she tripped on torn carpet in February 1986. Then, in August 1986, claimant again injured her back when she reached for the telephone. Id. at 61-62, 383 S.E.2d at 756-57. This Court determined that, because the claimant's injury was causally connected to her employment and not a natural progression of her 1984 injury, she suffered a new and separately compensable injury in August 1986. Id. at 63-65, 383 S.E.2d at 758-59.

As in Gryder, credible evidence supports the commission's findings that both the July 1992 and September 1993 accidents resulted in new and independently compensable injuries to claimant's back. The evidence established that both the July 1992 and September 1993 accidents were identifiable incidents that reinjured her back, and both arose out of and in the course of claimant's employment. In July 1992, claimant was lifting a box of yogurt when she injured her back. After this accident,

5

claimant was disabled for one week, underwent an MRI, received an epidural steroid injection, and continued to suffer from persistent back pain.  Then, in September 1993, claimant again reinjured her back while weighing ice cream and was disabled for two weeks.  Each accident, standing alone, would constitute a separately compensable injury by accident, and the commission did not err in awarding claimant disability compensation and medical expenses attributable to each accident.

## RELEASE TO LIGHT DUTY

Employer argues that claimant's doctor released her to light-duty work on February 28, 1994, and that claimant failed to market her residual capacity.

The test for determining whether a claimant is obligated to market residual capacity is "not a bright line such as a specific notice to the claimant, but rather is an analysis of his efforts in the context of reasonableness."  Ridenhour v. City of Newport News, 12 Va. App. 415, 418, 404 S.E.2d 89, 90 (1991).  The commission should consider "the claimant's perception of his condition, his abilities, and his employability, and . . . the basis for that perception."  Id. at 418, 404 S.E.2d at 90-91.

Credible evidence supports the commission's finding that claimant had no reason to presume any capacity for employment. Although Dr. Nordt's February 28, 1994 report indicated that claimant was "unable to work in any job requiring exertional duty," his September 14, 1994 letter explained that "[i]t was

6

never clarified as to what she could and could not do until I received more specific information from rehabilitative services." From February 1994 to September 1994, claimant continued to experience back pain and was unable to attend physical therapy because of cost concerns. Additionally, claimant testified that Dr. Nordt never released her to work before he reviewed the job description in September 1994. Thus, no error occurred.

### OBLIGATION TO MARKET RESIDUAL CAPACITY DURING BRIEF PERIOD

Employer argues that the commission erred in finding that seven days was too brief a time period for claimant to begin marketing efforts.

The Workers' Compensation Act requires "a disabled employee to make a reasonable effort to market remaining work capacity in order to receive continued workers' compensation benefits." Holly Farms Foods, Inc. v. Carter, 15 Va. App. 29, 42, 422 S.E.2d 165, 172 (1992). However, "no such effort is required during brief periods of disability." Id. In Holly Farms, this Court upheld the commission's determination that an eight-day period of disability was too brief a period to require marketing of residual capacity. Id. at 42-43, 422 S.E.2d at 172.

In this case, the commission found that Dr. Nordt did not release claimant to light-duty work until September 7, 1994. The hearing was held on September 14, 1994, allowing claimant only seven days to begin marketing efforts. Additionally, Dr. Nordt did not approve the job description from rehabilitative services

7

until September 13, 1994, and claimant testified that Dr. Nordt did not release her to work prior to reviewing the job description.  Thus, the commission did not err in finding that

seven days was too short a period of time to require marketing activities.

<u>Affirmed</u>.
