COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


INTERSTATE TRUCK SERVICE, INC. AND
  AMERICAN HOME ASSURANCE CO.

v.      Record No. 3134-05-4

JOSEPH A. RICKETTS                                       MEMORANDUM OPINION[*] BY
                                                        JUDGE JEAN HARRISON CLEMENTS
JOSEPH A. RICKETTS                                            AUGUST 1, 2006

v.      Record No. 3170-05-4

HIGHWAY MOTORS, INC. AND VADA
  GROUP SELF-INSURANCE ASSOCIATION


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        John H. Carstens (Meredith J. Smith; Jordan Coyne & Savits, L.L.P.,
        on briefs), for Interstate Truck Service, Inc. and American Home
        Assurance Co.

        Nikolas E. Parthemos (Parthemos & Bryant, P.C., on briefs), for
        Joseph A. Ricketts.

        Arthur T. Aylward (Iris W. Redmond; Midkiff, Muncie & Ross,
        P.C., on brief), for Highway Motors, Inc. and VADA Group
        Self-Insurance Association.


        These separate appeals arise from a single judgment by the Workers' Compensation

Commission (commission) denying Joseph A. Ricketts (claimant) certain compensation on his

claim against Highway Motors, Inc., and its carrier, VADA Group Self-Insurance Association

(collectively, Highway Motors), and awarding him certain compensation on his alternative claim

against Interstate Truck Service, Inc., and its carrier, American Home Assurance Co.

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(collectively, Interstate). Interstate appeals the award contending the commission erred in (1) reviewing the decision of the deputy commissioner denying compensation on the alternative claim and (2) concluding claimant sustained a new injury by accident arising out of and in the course of his employment with Interstate. Additionally, in the alternative, claimant appeals the commission's denial of compensation on his claim against Highway Motors, asserting that, if the award against Interstate is reversed, then Highway Motors should provide compensation.

Because these appeals involve common facts, proceedings, and issues of law, we consolidate them for purposes of this decision. See Bennett v. Commonwealth, 8 Va. App. 228, 229 n.1, 380 S.E.2d 17, 18 n.1 (1989). Finding no error, we affirm the judgment of the commission.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of these appeals.

## I. BACKGROUND

On January 14, 2004, claimant injured his left knee while employed as a trailer technician for Highway Motors. Claimant sustained the injury on the job when he jumped down five feet from the rear of a trailer bed onto a concrete floor, landing on some loose boards. When claimant landed, the boards kicked out from under his feet causing his left knee to buckle and twist. Claimant immediately experienced a sharp pain in his left knee.

On January 28, 2004, claimant, who was unable to return to work after the injury, underwent an MRI of his left knee. The MRI indicated that he had sustained "extensive bilateral meniscus tears" in his knee. The MRI further indicated that claimant's anterior cruciate ligament (ACL) was "absent" and displayed "an appearance consistent with an old complete tear."

- 2 -

Preexisting the incident of January 14, 2004, claimant's ACL condition caused him to have an "at risk" left knee, which potentially predisposed him to knee injury.

On February 3, 2004, claimant came under the care of Dr. Thomas Daugherty, an orthopedic surgeon. After examining claimant, Dr. Daugherty performed surgeries on the tears in his left knee on February 6, 2004, and April 15, 2004. Dr. Daugherty monitored claimant's condition and released him to light-duty work on May 14, 2004. Having noted that claimant was "overall . . . doing moderately well," Dr. Daugherty released him to full-duty work with no restrictions on August 31, 2004.

Following his release to full-duty work, claimant quit his employment with Highway Motors and became employed as a trailer technician for Interstate. Claimant was employed by Interstate from September 2004 until November 2004, performing the "same" or "very similar" kind of work that he had performed with Highway Motors. Although he experienced some pain and instability in his knee during this time and wore a knee brace, claimant was able to work full time with occasional overtime and perform full-duty work. He did not visit with Dr. Daugherty at any time during his employment with Interstate.[1]

On November 29, 2004, claimant was employed by Interstate and was performing a work-related task inside a trailer car. Needing to retrieve additional materials to complete the task, he began to exit the rear of the trailer. Claimant had altered his manner of exiting trailer cars because of the continuing pain and instability in his knee. As he had done on many prior occasions with Interstate, he sat down at the rear of the trailer car and then hopped two to three feet down to a concrete floor. When claimant landed on the floor, which was free from debris,

---

[1] The only contact between claimant and Dr. Daugherty during this period was when claimant telephoned Dr. Daugherty on September 7, 2004, to complain about the increased pain he was experiencing following the administration on August 31, 2004, of a steroid injection in his left knee. Claimant visited no other physician during his employment with Interstate.

his left knee buckled. Claimant immediately experienced "excruciating" pain and swelling in his left knee and fell to the floor. He was thereafter immobilized, unable to return to his employment with Interstate, and restricted to sedentary labor.

On December 2, 2004, claimant visited Dr. Daugherty for treatment of his left knee. Dr. Daugherty examined claimant and noted that he had sustained an "aggravation of [his] pre-existing injury" during the November 29, 2004 incident. He further noted that claimant "had been doing moderately well" until the incident and was now "having significant additional problems." Dr. Daugherty opined that "[t]he question arises as to the origin of this. It is clear he never fully recovered from his injury of 1/14/04."

On December 16, 2004, claimant underwent an additional MRI of his left knee at the request of Dr. Daugherty. The MRI indicated that claimant had sustained "a significant increase in the joint effusion" and "extensive bone bruising." The "extensive bone bruising" constituted a "new finding." Dr. Daugherty reviewed the MRI and noted "multiple significant changes" to the left knee. In a later deposition, Dr. Daugherty attributed the "significant increase in the joint effusion" and the "extensive bone bruising" to the November 29, 2004 incident.

On December 30, 2004, claimant filed two separate claims with the commission seeking, in part, compensation for the disability period commencing after the November 29, 2004 incident.[2] He filed a claim against Highway Motors asserting that the November 29, 2004 incident was a natural consequence flowing from the primary injury he had sustained on January 14, 2004. Claimant also filed an alternative claim against Interstate asserting that he had sustained a new injury by accident on November 29, 2004, arising out of and in the course of his employment with Interstate. Claimant requested consolidation of these claims for hearing.

---

[2] Highway Motors accepted responsibility for claimant's primary injury that he sustained on January 14, 2004. Highway Motors compensated claimant for the injury until August 2004 when claimant returned to full-duty work.

On February 17, 2005, Dr. Daugherty wrote a letter to claimant's counsel addressing claimant's continuing left knee condition. In that letter, Dr. Daugherty opined:

> It is my opinion to a reasonable degree of certainty that 100% of the current problems and issues associated with [claimant's] left knee are attributable to his injury of January 14, 2004, and the sequelae from that. The episode in which he sustained a spontaneous fall on November 29, 2004, was directly related to the instability present in [claimant's] knee after his injury of January 14 and subsequent surgeries. The surgical/traumatic absence of his medial and lateral meniscus predisposes him to instability of the knee which is aggravated and accentuated by the absence of his anterior cruciate ligament, nonfunctional entity.

On February 22, 2005, Dr. Daugherty reexamined claimant's left knee and reiterated his previous medical opinion. Although claimant "emphasize[d] the amount of swelling that occurred in his knee after the fall on 11/29/04," Dr. Daugherty opined that "the event of 11/29/04 was 100% related to issues in the knee which emanated from the 1/14/04 injury. In other words, the 11/29/04 injury was not a new event but strictly a complicating factor of his 1/14/04 injury and subsequent treatment."

Dr. Robert A. Smith, an orthopedic surgeon, performed a records review for Highway Motors and prepared a report on his findings on May 11, 2005. In that report, Dr. Smith, who had not personally treated claimant, opined that claimant had sustained a "new injury to his left knee in the work incident of November 29, 2004." He explained that claimant had been "treated adequately by Dr. Daugherty, rehabilitated and released for full duty work prior to [the] November 2004 incident." He further explained that claimant's "chronic ACL deficiency would lead to an unstable knee and the mechanism of injury in the November 29 event could clearly lead to this new injury."

On June 17, 2005, the deputy commissioner consolidated the claims against Highway Motors and Interstate for hearing. Following the hearing, in which claimant, Highway Motors, and Interstate participated without objection, the deputy commissioner issued a single opinion,

wherein he awarded claimant compensation on his claim against Highway Motors for the post-November 29, 2004 disability period and denied claimant's alternative claim for such compensation against Interstate. The deputy commissioner concluded that "the disability and treatment after November 29, 2004, [was] related to the January 14, 2004, incident and not a new incident on November 29, 2004. Thus, the responsibility for such treatment remain[ed] with the initial employer[, Highway Motors]." The deputy commissioner also concluded that claimant was not entitled to temporary total disability benefits from February 22, 2005, through March 15, 2005, because he had failed to market his residual work capacity during that period.

On July 5, 2005, Highway Motors filed a timely request for review of the deputy commissioner's decision in the consolidated proceeding, specifically raising the issue of whether "claimant sustained a new injury by accident with Interstate" on November 29, 2004. Highway Motors referenced both claims in its request and mailed a copy of the request to claimant and Interstate. Claimant, also referencing both claims, filed a timely request for review "only [as] to that portion of the [deputy commissioner's decision] which denied payment of temporary total disability benefits from February 22 through March 15, 2005." Claimant mailed a copy of its request for review to Highway Motors and Interstate.

On November 28, 2005, the full commission issued a single judgment reversing the deputy commissioner's decisions that "claimant was required to market his residual capacity from February 22 through March 15, 2005," and that "Highway Motors remained liable for . . . claimant's incapacity and medical expenses after November 29, 2004." With regard to the November 29, 2004 incident, the commission concluded that claimant had sustained a new injury by accident arising out of and in the course of his employment with Interstate and awarded claimant compensation for the post-November 29, 2004 disability period on his alternative claim against Interstate.

These appeals followed.

## II. COMMISSION'S REVIEW OF DECISION PERTAINING TO INTERSTATE

We first address the threshold question, raised by Interstate, of whether the full commission erred in reviewing the decision of the deputy commissioner denying compensation on the alternative claim against Interstate. Interstate contends that the commission erred in reviewing the decision because (1) the claims against Highway Motors and Interstate were never formally consolidated and, as a result, the commission's review should have been limited to the decision on the claim against Highway Motors, and (2) claimant failed to assign error in his request for review to the decision on the alternative claim against Interstate, and the commission "cannot review what . . . claimant did not request." We disagree.

Separate claims or actions may, in some circumstances, be consolidated without a formal order. See Eagles v. Cook, 63 Va. (22 Gratt.) 510, 512 (1872). Indeed, where parties voluntarily participate in a consolidated hearing aimed at the common resolution of their separate actions or claims, the actions or claims, though not formally consolidated, may be treated as consolidated "in effect." Id. As the Supreme Court observed in Eagles:

> [T]wo actions being of the same nature, and between the same parties, [represent] a proper case for a consolidation of the actions, and [a] court might properly ex mero motu . . . order[] the cases to be consolidated and heard together. And while it would [be] the most regular course to . . . enter[] a formal order of consolidation, the failure to make that entry is not such an error as can be taken advantage of in an Appellate court.
> The agreement of the parties that the causes [are to] be heard together [is] in effect a consolidation of the two actions. [Thus, where t]he parties and the court treat[] the two actions as one, and a general verdict and judgment in solido [is] not . . . objected to by the [appellant], [that judgment] cannot be said [on appeal] to be erroneous [for lack of consolidation].

Id. at 511-12.

The alternative claims in the present case, though never consolidated by formal order, were consolidated "in effect." Prior to the full commission's review, the claims were litigated and adjudicated on a consolidated basis. Seeking compensation, in part, for the disability period arising after the November 29, 2004 incident, claimant filed alternative claims with the commission and requested that the claims be consolidated for hearing. The deputy commissioner consolidated the claims for purposes of the hearing, and claimant, Highway Motors, and Interstate all voluntarily participated in the hearing without objection. Following the presentation of common evidence, the deputy commissioner issued a single opinion, wherein he made findings of fact and conclusions of law central to the resolution of both claims. The progression of these claims demonstrates that they were consolidated "in effect" by both the parties and the deputy commissioner. As a result, the full commission's subsequent review was not limited to the decision only as it pertained to the claim against Highway Motors.[3]

Furthermore, the full commission was enabled to review the decision denying the alternative claim against Interstate even though claimant did not assign error thereto in his request for review. Referencing the alternative claims, Highway Motors's timely request for review raised the issue of Interstate's liability. In so doing, the request sufficed to place that issue, and the decision pertaining to Interstate, before the full commission for review. Claimant's timely request also enabled the full commission to consider, "in the interest of justice," the decision on the alternative claim against Interstate, regardless of whether claimant specifically assigned error to that decision in his request for review. Arellano v. Pam E. K.'s Donuts Shop, 26 Va. App. 478, 484, 495 S.E.2d 519, 522 (1998); Ratliff v. Rocco Farm Foods,

---

[3] It is also noteworthy here that Rule 5A:11, entitled "Special Rule Applicable to Appeals From the Virginia Workers' Compensation Commission," provides that, "[w]henever two or more cases were tried together in the Virginia Workers' Compensation Commission, one notice of appeal and one record may be used to bring all such cases before the Court of Appeals even though such cases were not consolidated by formal order." Rule 5A:11(f).

16 Va. App. 234, 237-38, 429 S.E.2d 39, 41-42 (1993). Because review of the decision pertaining to Interstate's liability was central to the resolution of the consolidated claims, review of that decision was in the "interest of justice."

Therefore, we hold that the full commission did not err in reviewing the decision of the deputy commissioner denying compensation on the alternative claim against Interstate.

### III. NEW INJURY BY ACCIDENT

We next address whether the commission erred in concluding that claimant sustained a new injury by accident arising out of and in the course of his employment with Interstate on November 29, 2004. Interstate contends the credible evidence presented in the case failed to prove that claimant sustained a new injury by accident on that date, asserting instead that the November 29, 2004 incident was a natural consequence flowing from claimant's primary injury with Highway Motors on January 14, 2004. We disagree.

> "Whether a [claimant] has suffered an 'injury by accident' is a mixed question of law and fact. Findings of fact by the . . . [c]ommission will be upheld on appeal if supported by credible evidence. However, whether those facts prove the claimant suffered an 'injury by accident' is a question of law. The commission's finding on the legal question is not conclusive and binding upon us, but is properly subject to judicial review.

Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 167-68, 543 S.E.2d 619, 621 (2001) (citations omitted).

"When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment, every natural consequence that flows from the injury is compensable if it is a direct and natural result of a primary injury." Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 99 (1977). This rule, however, "has no application to a new and separate accidental injury." Id. That is to say, a new and separate accidental injury is not a naturally flowing consequence of a primary injury. Id. A claimant seeking to obtain disability

- 9 -

compensation on the theory of a new and separate accidental injury must prove that "the incident giving rise to the [injury] . . . satisf[ies] each of the requirements for an 'injury by accident.'" First Fed. Sav. & Loan Ass'n v. Gryder, 9 Va. App. 60, 63, 383 S.E.2d 755, 757 (1989). In order to establish an "injury by accident," claimant must prove that "the cause of his injury was an identifiable incident or sudden precipitating event and that it resulted in an obvious sudden mechanical or structural change in the body." Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989) (emphasis omitted). Where a claimant proves the aforementioned requirements, he may seek compensation against the employer for whom he was working at the time of the accident. See Bd. of Supervisors v. Martin, 3 Va. App. 139, 145, 348 S.E.2d 540, 543 (1986).

Issuing a single judgment on the consolidated alternative claims, the commission concluded from claimant's testimony and "the weight of the medical evidence" in the record that claimant sustained a new injury by accident on November 29, 2004. In reaching that conclusion, the commission specifically found that the cause of claimant's injury was the identifiable incident of claimant "hopp[ing] down a distance of two to three feet from a trailer onto his lower extremities on November 29, 2004, at which time his left knee gave way and he experienced immediate left knee pain." The commission also found that claimant's injury on that date resulted in obvious sudden mechanical or structural change, or more specifically, the "bruis[ing] of] the bones" and "increased effusion" in his left knee.

Credible evidence in the record supports these findings of fact. The evidence established that, having sufficiently recovered from his injury of January 14, 2004, claimant was released by Dr. Daugherty on August 31, 2004, to work full time as a trailer technician with no restrictions. Claimant worked for Interstate in that capacity for nearly three months. He completed all tasks required by the employment and did not seek treatment for his left knee until the accident on November 29, 2004. On that day, claimant was performing a work-related task for Interstate

- 10 -

inside a trailer car and, in order to complete the task, he exited the trailer car by hopping down two to three feet to a concrete floor. When he landed, claimant's left knee buckled and he fell to the floor. The December 16, 2004 MRI findings indicated that claimant suffered an "increase in the joint effusion" and "extensive bone bruising." Dr. Daugherty attributed these findings to the November 29, 2004 incident and noted that the MRI findings demonstrated that claimant suffered "multiple significant changes" and "additional significant problems" following the incident.

The commission implicitly acknowledged that Dr. Daugherty's medical notes and opinions contained an internal conflict as to whether claimant sustained a new injury by accident on November 29, 2004. On at least three occasions after November 29, 2004, Dr. Daugherty specifically stated in his notes that claimant's left knee injury was unequivocally related to his primary injury of January 14, 2004.[4] However, Dr. Daugherty, in a later deposition, attributed the manifest structural changes in claimant's left knee—the "extensive bone bruising" and "increase in the joint effusion"—to the identifiable incident on November 29, 2004, and noted that claimant suffered "multiple significant changes" and "additional significant problems" as a result of that incident. The commission explained and resolved the internal conflict as follows:

> [A]lthough Dr. Daugherty . . . indicated that the claimant's disability and need for treatment [after November 29, 2004,] was "100% related" to the injury occurring on January 14, 2004, and was not related to the events on November 29, 2004, he also acknowledged during his deposition that the claimant bruised the bones of his knee and experienced increased effusion as a result of hopping down from the trailer bed on November 29, 2004— thereby supporting the conclusion that the claimant experienced a sudden mechanical or structural change in his body because of the incident on November 29, 2004. Furthermore, Dr. Smith, the orthopedist who examined the claimant's medical records on behalf of [Highway Motors], rendered an opinion which was essentially consistent with the opinion offered by Dr. Daugherty when he first examined the claimant after November 29, 2004—

---

[4] These occasions were December 2, 2004, February 17, 2005, and February 22, 2005.

that is, Dr. Smith opined that the claimant suffered a new injury on November 29, 2004, which was likely to have been caused by the pre-existing weakness in the claimant's left knee.

As is evident from its analysis, the commission rejected Dr. Daugherty's opinion that claimant did not sustain a new injury by accident on November 29, 2004, and instead accepted the portions of his notes and opinion that supported the opposite finding. Specifically, on August 31, 2004, Dr. Daugherty noted that claimant was "overall . . . doing moderately well" after the January 14, 2004 injury and released him to work with no restrictions. Dr. Daugherty noted that claimant did not seek treatment from September 7, 2004, until December 2, 2004. On December 2, 2004, following the incident with Interstate, Dr. Daugherty examined claimant and noted that he had "aggravated [his] pre-existing condition," "had been doing moderately well" until the incident, and was "now having significant additional problems." In a later deposition, Dr. Daugherty attributed the structural changes shown by the MRI—the "extensive bone bruising" and "increase in the joint effusion" in claimant's left knee—to the incident of November 29, 2004. The commission also noted that these portions of Dr. Daugherty's notes and opinions were consistent with the medical opinion of Dr. Smith, who opined that claimant sustained a "new injury" on November 29, 2004.

The commission's resolution of a conflict in medical evidence, including an internal conflict in an expert's opinion, is within the purview of the commission's fact-finding authority and is binding on appeal if it is supported by credible medical evidence. Chandler v. Schmidt Baking Co., 228 Va. 265, 267-68, 321 S.E.2d 296, 297-98 (1984); Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 170-71 (1994). As pointed out above, there is credible medical evidence in the instant record to support the commission's resolution of the conflict in medical evidence. Hence, the commission's resolution is conclusive and binding upon us.

- 12 -

Given the findings of the commission and the credible evidence in the record in support thereof, we hold that the commission did not err in concluding that claimant sustained a new injury by accident arising out of and in the course of his employment with Interstate on November 29, 2004.

## IV.  CONCLUSION

For these reasons, we affirm the judgment of the commission.

<u>Affirmed.</u>