COURT OF APPEALS OF VIRGINIA


Present:   Judges Haley, Beales and Alston
Argued at Alexandria, Virginia


JAMIE LEE DOVELL

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0744-11-4              JUDGE ROSSIE D. ALSTON, JR.
                                                         JANUARY 24, 2012

COFFEEWOOD CORRECTIONAL CENTER/
 COMMONWEALTH OF VIRGINIA


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Matthew J. O'Herron (Turbitt, O'Herron & Leach, P.L.L.C., on
              brief), for appellant.

              Adam L. Katz, Assistant Attorney General (Kenneth T.
              Cuccinelli, II, Attorney General; Wesley G. Russell, Jr., Deputy
              Attorney General; Peter R. Messitt, Senior Assistant Attorney
              General, on brief), for appellee.


       Jamie Lee Dovell (claimant) appeals a decision of the Workers' Compensation

Commission (the commission) denying his claim for benefits after he suffered an injury while

working at the Coffeewood Correctional Center (employer).  Claimant asserts that the

commission erred in finding that his injury did not arise out of a condition of his employment.

Additionally, claimant contends that the commission erred in finding that the height of the chair

employer required claimant to work from and the lack of a safety bar on that chair were not risks

of his employment.  For the reasons that follow, we find that the commission applied an

inapposite analysis in concluding that claimant's injury did not arise out of his employment.

Accordingly, we remand the case to the commission for proceedings consistent with this opinion.

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On January 10, 2010, claimant was working as a senior correctional officer at employer's facility. Employer assigned claimant to work in the medical department that day, supervising inmates from a raised chair at an elevated desk, and answering the duty station door and the telephone. When the doorbell rang, claimant attempted to answer the door and was injured when he slid down from the raised chair to the floor and felt shooting pain and a tingling sensation in his right leg.

According to claimant, the height of the chair caused his legs to dangle approximately six to twelve inches above the floor. Claimant sought treatment at Culpeper Regional Hospital and filed a claim for benefits. On January 26, 2010, claimant gave a recorded statement about his injury.

On August 3, 2010, the deputy commissioner conducted an evidentiary hearing. Claimant testified that at some point after giving his recorded statement, he obtained photographs of the raised chair from employer's safety officer, Nathaniel Griffin. Over employer's objection, claimant testified that Griffin told him during their discussion about the photographs of the chair that the chair was missing a safety bar. According to claimant, Griffin informed him that the safety bar would have hung at approximately the same height as where claimant's feet dangled. Claimant testified that he was not previously aware of the missing safety bar because the raised chair never had a safety bar since he had begun using it. Claimant asserted that he would have used the safety bar to step down just like stepping down a normal set of stairs had it been on the raised chair. Claimant submitted four pictures of the raised chair to the deputy commissioner

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. We also note that the facts in this case are not in dispute.

and indicated in the pictures where the safety bar was missing.  For illustrative purposes, one of the pictures is referenced herein:



On cross-examination, claimant admitted that he had not mentioned a defect in the chair or a missing safety bar in his discovery responses or in his later updates to those responses.  Claimant also conceded that he did not subpoena Griffin to the hearing, nor did he provide a written statement from Griffin to corroborate claimant's testimony.  No other witnesses testified, and employer did not present any additional evidence.

The deputy commissioner issued an opinion denying the claim.  After summarizing the evidence and applicable law, the deputy commissioner found that claimant's injury was not an injury that arose out of his employment.  Specifically, the deputy commissioner found:

> It is the Commission's opinion that [claimant] merely injured his knee when he stood up from a slightly elevated chair.  He denied

any defect in the chair when he gave his recorded statement and he was not otherwise distracted or prevented from rising from the chair due to any obstruction. Even if his feet had to drop several inches when he arose from the chair, that drop is no more significant than stepping from a staircase of normal height. Therefore, the Commission finds that [claimant's] injury did not arise from a condition of his employment.

Claimant timely filed a request for a review of the deputy commissioner's opinion. The commission affirmed the deputy commissioner's opinion based on similar rationale. Specifically, the commission noted that claimant's action in getting down from the raised chair was not a risk of his employment, despite the testimony concerning the height of the chair and missing safety bar. Like the deputy commissioner, the commission applied a "stairs analysis" to claimant's case, stating:

> [Claimant] testified that his feet dangled between six and twelve inches from the floor while sitting on the chair. Thus, the drop from the point at which his feet hung to the floor was approximately the same as a normal step. It is well-settled that for a fall on steps to be compensable there must be a defect in the steps or a risk peculiar to the employment.
>
>   \*  \*  \*  \*  \*  \*  \*
>
> A normal step down is about eight inches, and there is no conclusive evidence that the drop from the chair was any greater than this. [Claimant], the only person to testify, stated that he thought it was between six and twelve inches. Further the "defect" that he asserts was the lack of a safety bar. However, [claimant] did not know there was supposed to be a safety bar until well after his accident. He said that he would have used the safety bar, but it was never there.

One member of the commission dissented, finding that the injury arose out of the employment. The dissenting commissioner disagreed with the majority's application of the "stairs analysis," stating:

> An injury arises out of the employment when it is caused by a condition of the employment. In this case, [claimant's] knee injury resulted from his dropping down from a chair which was elevated.

The Majority concedes that this was not a normal height for a chair, and that the knee injury was caused by this. However, the Majority reasons that since the step down from the chair wasn't extremely high, but only a few inches higher than a normal step, there is no causal relation to the working conditions. This is faulty reasoning. First, getting down from a chair is not the same activity as stepping down a staircase. Secondly, there is nothing in the law that grants compensation only when hazards are extreme.

In this case, the unique hazard was sufficient to cause an injury. This should fall within the jurisdiction of the Commission, not the civil courts.

This appeal followed.

ANALYSIS

We begin by noting that although claimant listed two assignments of error, he concedes on brief that the two assignments essentially address the same issue – whether the raised chair and the movements claimant made in his attempts to get down from the chair created the requisite connection between the conditions of his employment and the injury he suffered. Therefore, we will limit our analysis to this issue.

At the outset we acknowledge the long-standing principle that the Workers' Compensation Act is remedial in nature and should be liberally construed in favor of the worker. E.I. du Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 17, 563 S.E.2d 685, 687 (2002). To obtain compensation for his injuries, claimant must prove by a preponderance of the evidence that he suffered an injury by accident "arising out of and in the course of the employment." Code § 65.2-101. On appeal, whether an employee has suffered an "injury by accident" is a mixed question of law and fact. R&R Constr. Corp. v. Hill, 25 Va. App. 376, 378-79, 488 S.E.2d 663, 664 (1997). This Court upholds the commission's findings of fact on appeal if credible evidence supports them. James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). However, whether those facts prove that a claimant suffered an "injury by accident" is a question of law. Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 168,

- 5 -

543 S.E.2d 619, 621 (2001) (citing Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970)). The commission's findings on legal questions are not conclusive and binding upon the Court, but are properly subject to judicial review. Id. (citing Hill, 25 Va. App. at 378-79, 488 S.E.2d at 664).

"The phrases arising 'out of' and arising 'in the course of' are separate and distinct." County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989). These phrases "mean different things and . . . proof of both is essential to recovery under the Act." Id. (citing Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)). "The phrase arising 'in the course of' refers to the time, place, and circumstances under which the accident occurred. The phrase arising 'out of' refers to the origin or cause of the injury." Johnson, 237 Va. at 183, 376 S.E.2d at 74. "An injury arises out of the employment when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." Hercules, Inc. v. Stump, 2 Va. App. 77, 79, 341 S.E.2d 394, 395 (1986) (quoting Baggett Transp. Co. v. Dillon, 219 Va. 633, 637-38, 248 S.E.2d 819, 822 (1978) (internal quotations omitted)). The injury also "must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." Id. at 80, 341 S.E.2d at 395 (quoting Dillon, 219 Va. at 638, 248 S.E.2d at 822 (internal quotations omitted)). In this case, employer does not dispute that claimant's injury occurred in the course of his employment. Therefore, the only dispute before us is whether claimant's injury "arose out of" his employment.

Succinctly stated, an injury arises out of the employment when a claimant can demonstrate that a condition of the workplace either caused or contributed to his injury. Southside Training Ctr. v. Shell, 20 Va. App. 199, 202, 455 S.E.2d 761, 763 (1995). Employer has not argued that claimant's injury flowed from some source other than claimant's effort to

answer the doorbell at his duty station by debarking from a raised chair he was required to sit in as a condition of his job responsibilities. To the contrary, employer has urged this Court to adopt the commission's conclusion that claimant injured his knee when getting down from the chair and that the drop from the chair was no different from stepping down a normal step.

For the following reasons, we find that claimant's circumstance is analytically dissimilar from previous decisions adopting a so-called "stairs analysis," see Central State Hosp. v. Wiggers, 230 Va. 157, 335 S.E.2d 257 (1985); UPS v. Fetterman, 230 Va. 257, 336 S.E.2d 892 (1985); and Richmond Memorial Hosp. v. Crane, 222 Va. 283, 278 S.E.2d 877 (1981), and more logically similar to our decision in First Federal Sav. & Loan Assoc. v. Gryder, 9 Va. App. 60, 383 S.E.2d 755 (1989).

In Gryder, we affirmed the commission's conclusion that a bank teller suffered a compensable injury when she contorted her body while sitting on a raised stool to answer a phone. Id. at 65-66, 383 S.E.2d at 758-59. Specifically, we held: "The contortion of the body, as described, is not a risk to which all persons are equally exposed. Phrased differently, the injury came from a hazard to which Ms. Gryder would not have been equally exposed apart from the conditions of employment." Id. at 65, 383 S.E.2d at 759.

Claimant's uncontroverted testimony was that the height of the raised duty station chair left his feet dangling between six and twelve inches above the ground. Although we are bound by the commission's factual finding that the *drop* was only eight inches – the height of a normal *step* – eight inches is not the height of the drop from a normal *chair* to the floor. The undisputed evidence demonstrated that claimant had to contort his body to slide down from the raised chair before his feet would reach the ground each time the doorbell to the infirmary rang.[2] We find,

---

[2] Claimant noted that had the safety bar been in place, he would have stepped on it first and then to the ground, as if walking down a normal flight of stairs. It may be significant to note that the raised chair was missing its safety bar, but because we find that the height of the chair

- 7 -

consistent with our holding in <u>Gryder</u>, that in the unique circumstances of this case, claimant's action in sliding down from a raised chair for his feet to reach the ground to accomplish his job-related tasks, is not an action that he would have been equally exposed to apart from the conditions of his employment. Thus, claimant proved by a preponderance of the evidence that his injury arose out of his employment.

CONCLUSION

Accordingly, we find that the commission erred in applying a "stairs" analysis to find that claimant's injury did not arise out of his employment and reverse and remand for proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

created a risk of employment, we need not reach the issue of whether this patent defect alone would make claimant's injury compensable.