COURT OF APPEALS OF VIRGINIA

Present:  Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


PAULA TURCIOS
                                          OPINION BY
v.          Record No. 2242-95-4    JUDGE ROSEMARIE ANNUNZIATA
                                          APRIL 8, 1997
HOLIDAY INN FAIR OAKS, ET AL.


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Arturo Hernandez for appellant.

        Douglas A. Seymour (Law Offices of E. Wayne
        Powell, on brief), for appellees.



        Claimant, Paula Turcios, appeals the decision of the

commission reversing the deputy commissioner's credibility

findings and denying her application for temporary total

disability benefits for an alleged injury by accident arising out

of and in the course of her employment with employer, Holiday Inn

Fair Oaks.  Claimant contends that the commission's decision was

arbitrary and must be reversed.  We agree.

                                I.

        All the evidence was taken before the deputy commissioner.

Claimant testified that in the course of cleaning one of

employer's rooms on December 9, 1992, she slipped on baby powder

on the bathroom floor, which caused her to fall and land on her

buttocks.  Claimant attempted to continue working in the room,

but upon bending to make the bed, she felt pain which precluded

her from continuing.  Claimant waited in the room.  When her

supervisor, Marguerita Gomez, passed by, claimant recounted her

slip and fall and the resulting pain she felt in her back, neck and legs. Gomez testified and confirmed claimant's recitation of the incident.

Gomez stated that she reported the incident to her manager, Cathy Kolodziej, who referred Gomez and claimant to Michelle Wertz, employer's personnel director. Claimant testified that she told Kolodziej she had fallen and that her pain began when she bent over to make the bed. Gomez testified that, acting as claimant's interpreter, she told both Kolodziej and Wertz claimant had slipped and fallen on the bathroom floor. Claimant had difficulty understanding what Gomez told Kolodziej and Wertz because she does not understand English well. Neither claimant nor Gomez saw Kolodziej or Wertz prepare a report describing the incident they had reported.

In November 1994, Donald Roberts replaced Wertz as employer's human resources director. Roberts testified that both Wertz and Kolodziej were no longer employed by employer. Roberts identified an internal report prepared on December 9, 1992 by Kolodziej as a form used by employer when an employee is injured. Roberts also identified "Employer's First Report of Accident" prepared by Wertz also on the day of the incident. The internal accident report describes the incident as follows: "[Claimant] was making the bed in # 607, she went to tuck the corner in, when she was moving in a fast pace and strained her neck which caused her back to ache." Employer's First Report of Accident describes

the occurrence as follows: "[claimant] was making the bed in 607 when she tucked in the corner, and pulled neck causing back pain."

On December 10, 1992, claimant sought medical treatment from an emergency clinic. Claimant testified that she did not describe the circumstances of her accident to the people at the clinic because of her poor command of English and because nobody at the clinic could translate for her. She testified that she described her pain and its onset in response to the questions asked. The clinic report from the December 10 visit states that claimant suffered a "work related injury on 12-09-92 while making bed at Holiday Inn – c/o low back pain – Pt. speaks very little English – Pt. states she was bending not lifting when injury occurred." The report of a radiology examination conducted the same day notes, "c/o back pain. Injured when making bed yesterday." Because of the poor copy quality of the clinic report in the record from the commission, the clinic's diagnosis of claimant's condition is not discernible. However, it is clear the physical findings in the clinic's report address the condition of the L-5 area of claimant's spine. Claimant next sought medical attention in October 1993 when she returned to the emergency clinic, apparently complaining of back pain. The record contains no medical reports from the October 1993 visit.

Claimant thereafter sought medical treatment in May 1994 from Dr. Julio C. Gonzalez. Dr. Gonzalez's initial report of May

16, 1994 states, "[claimant] is being evaluated in regard to injuries sustained at work around December 9, 1992. The patient presents with severe pain in the lumbosacral areas that radiates to the right lower extremity."

Dr. Gonzalez diagnosed right sciatic neuralgia secondary to trauma, chronic back pain, and lumbosacral contusion. He opined that claimant may have denervation activity in the L-5 roots, the same spinal area noted in the medical report from the emergency clinic claimant initially consulted. Furthermore, an MRI revealed spondylolysis at L-5 and a grade II spondylolisthesis at L-5/S-1. Dr. Gonzalez's initial report also relates the history of claimant's condition as follows:

> Around December 9, 1992, [claimant] was cleaning a bathroom and skidded on a slippery floor and fell to the floor in a sitting position. The patient was able to stand up on her own, and try to continue working, cleaning hotel rooms, and was trying to finish dressing the bed, she suddenly became stiff in the back and could not move. She went ahead and informed the incident to the supervisor, and, apparently, they did not take any account of the incident, as it was, and maybe they misunderstood that she fell in a sitting position before moving to the bed. She was sent several days later "clinic", [sic] where she was examined and released. She was place [sic] off work for about seven days and then, when she returned to work, she tried to obtain light duty status, but she could not get it. She went on working with difficulties, and the pain continued. Several months later, she became acutely ill, for the same symptomatology, and went to the clinic again. The pain is described as shooting from the back to the right lower extremity, and it is worse at the end of the day, after making twelve to fifteen and sometimes eighteen rooms in the hotel. . . .

Dr. Gonzalez examined claimant nine times between May 16 and July 21, the day he instructed her to remain out of work. In the reports from six of those visits, Dr. Gonzalez noted that claimant was under his care in regard to injuries sustained at work in December 1992. Dr. Gonzalez treated claimant for the same condition during each of these visits.

## II.

There is no dispute that claimant injured her back on December 9, 1992, while working for employer. There is also no dispute that claimant was totally disabled as of July 21, 1994. The question before the commission was whether the evidence established that claimant suffered an "injury by accident" on December 9, 1992, and, if so, whether that injury was causally related to her total disability.

## A. INJURY BY ACCIDENT

Determination of whether an "injury by accident" occurred depends on whether claimant slipped and fell in the bathroom as she and Gomez described. There is no dispute that if claimant slipped and fell in the bathroom, she suffered an "injury by accident" within the meaning of the Act.[1] Conversely, there is

---

[1] To establish an "injury by accident," a claimant must prove "an identifiable incident or sudden precipitating event [that results] in an obvious sudden mechanical or structural change in the body." E.g., Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989). It is not necessary to show an immediate onset of the symptoms of an injury. Hercules, Inc. v. Gunther, 13 Va. App. 357, 364 n.2, 412 S.E.2d 185, 189 n.2 (1991).

no dispute that in the absence of a slip and fall in the bathroom, no "injury by accident" occurred.

Claimant bore the burden of proving the slip and fall occurred. See, e.g., Hercules, Inc. v. Stump, 2 Va. App. 77, 79, 341 S.E.2d 394, 395 (1986). There is no dispute that, standing alone, the substance of the ore tenus testimony describing the slip and fall is sufficient to carry the burden. The deputy commissioner found that testimony to be credible and awarded compensation. The full commission reversed, necessarily rejecting the deputy commissioner's credibility determination.

The commission is not constrained to accept the credibility findings of a deputy commissioner. However, the decision to reverse such findings cannot be rendered arbitrarily. The record must reflect a reasonable basis for the commission's different conclusion. Williams v. Auto Brokers, 6 Va. App. 570, 575, 370 S.E.2d 321, 324 (1988).[2] We find no reasonable basis in the record to support the commission's decision to reverse the deputy's credibility determination. We conclude, therefore, that the commission's decision was arbitrary and must be reversed.

---

[2] Although we believe prudence would dictate otherwise, the law does not require the commission to articulate specifically its reasons for reaching a different credibility determination, unless it reverses a "specific, recorded observation regarding . . . behavior, demeanor or appearance." See Bullion Hollow Enters., Inc. v. Lane, 14 Va. App. 725, 729, 418 S.E.2d 904, 907 (1992). While the commission generally need not articulate its reasons for reversing a deputy's credibility findings, this principle does not provide authority for the commission to render its decisions arbitrarily. Rather, its decision must be supported by the record. See Williams, 6 Va. App. at 573–74, 370 S.E.2d at 323–24.

The commission's decision to reverse the deputy's credibility determination was premised on the absence of a description of a slip and fall in the written reports of the incident, all of which the commission found "reflect a history of back pain while bending over to make a bed."  The commission credited the substance of the written reports, and in so doing reversed the deputy's credibility finding with respect to the ore tenus testimony, on the basis of the written reports' contemporaneity to the incident.  However, the commission's reliance on the fact that a description of the slip and fall did not appear in any of the "contemporaneous" reports inexplicably fails to consider the most contemporaneous report of all, that made by claimant to Gomez, claimant's supervisor.  There is no dispute that the initial report, from claimant to Gomez, recounted a slip and fall in the bathroom.  Under the commission's theory concerning the relative reliability of the reports, the report to Gomez, describing the slip and fall, is the most reliable report of all.  The second most contemporaneous report of the incident was Gomez's report to Wertz and Kolodziej, which also described the slip and fall.

In addition, the record does not support a finding that the ore tenus testimony was inherently incredible.  While the credibility of claimant's testimony could be questioned by her obvious interest in the outcome of the case, the same cannot be said of Gomez.  Nothing in the record supports the conclusion

- 7 -

that Gomez was motivated by bias or interest to testify that a slip and fall occurred. Indeed, there is no evidence that Gomez shared any association with claimant except as an agent of employer. Furthermore, the _ore tenus_ testimony was contrary to the written reports only in what the written reports did not contain. The information contained in the written reports, which, as the commission found, "all reflect a history of back pain while bending over to make a bed," was consistent with the _ore tenus_ testimony describing claimant's onset of pain. Finally, the absence of a description of a slip and fall in the written reports was explained by the _ore tenus_ testimony before the deputy commissioner. That testimony described the circumstances surrounding the preparation of the reports, and was unrefuted by any other evidence. Claimant's poor command of English limited her ability to give her account of the accident to the employer and to relate the full extent of her accident to the clinic personnel, none of whom could translate for her, as she attempted to describe her pain, not its causative source, to them.

In sum, we find no reasonable basis to support the commission's decision to reverse the deputy's credibility determination. Accordingly, we find the commission's decision to be arbitrary and reverse it.

### B. CAUSATION

We must next determine whether claimant's total disability

as of July 21, 1994 is causally related to her December 9, 1992 slip and fall. Both the deputy commissioner and the full commission considered the significance of the lapse of time between claimant's injury and her treatment by Dr. Gonzalez. The deputy commissioner found claimant's July 1994 disability causally related to the December injury in light of Dr. Gonzalez's uncontradicted medical opinion. However, because of the absence of a specific medical finding of causation, the commission found no causal connection.

We find that the commission erred in employing such a standard. It is well established that, while causation is an essential element of a compensable injury by accident, causation between an injury and a disability need not be established by the testimony of a medical expert. See Dollar General Store v. Cridlin, 22 Va. App. 171, 177, 468 S.E.2d 152, 154-55 (1996).

Here, Dr. Gonzalez's reports sufficiently establish a causal relationship between claimant's injury of December 1992 and her July 1994 disability. Although Dr. Gonzalez never used the words, "I find a causal connection," it is clear from a review of his records that he found a causal connection. At the beginning of his treatment, Dr. Gonzalez referred to the December 1992 injury as the origin of claimant's condition. Dr. Gonzalez treated claimant for the same symptoms involving the L-5 area of her spine, which she expressed in December 1992, immediately after the injury occurred. Nowhere in the medical records is

there evidence to suggest an intervening cause.  And, Dr. Gonzalez's history describes the ongoing and uninterrupted pain claimant experienced beginning in December 1992 and continuing through his treatment.

For the reasons stated, we reverse the decision of the commission and remand the case to the commission to enter an award consistent with the views expressed herein.[3]

Reversed and remanded.

---

[3] In light of our conclusion, we decline to address the other issues claimant raises on appeal.