COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


GOODYEAR TIRE & RUBBER COMPANY AND
 TRAVELERS INDEMNITY COMPANY OF ILLINOIS
                                        OPINION BY
v.    Record No. 1631-00-3        JUDGE ROSEMARIE ANNUNZIATA
                                     MARCH 27, 2001
JERRY E. HARRIS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            James A. L. Daniel (Martha White Medley;
            Daniel, Vaughn, Medley & Smitherman, P.C., on
            brief), for appellants.

            Stephen G. Bass (Carter, Craig, Bass, Blair &
            Kushner, P.C., on brief), for appellee.


     Appellant, Goodyear Tire & Rubber Co., appeals an award of

benefits under the Workers' Compensation Act, contending:  (1)

the injury suffered by claimant, Jerry E. Harris, did not arise

by accident but, rather, arose from a condition brought on by

non-compensable, cumulative trauma; and (2) Harris failed to

give Goodyear proper notice of the accident as required by Code

§ 65.2-600.  We disagree and affirm.

                          BACKGROUND

     Under accepted principles, we review the evidence in the

light most favorable to Harris, the party prevailing below.

Great Eastern Resort Corp. v. Gordon, 31 Va. App. 608, 610, 525

S.E.2d 55, 56 (2000).  Goodyear employed Harris as a fabric

calendar mill operator for twenty-five years.  On February 4, 1999, Harris was attempting to pull fabric loose that had wrapped around a roll on one of the mill machines.  In order to disengage the wrapped fabric, Harris had to crawl into a hole under the machine and pull the "wrap up" apart while on his knees.  On the date in question, the procedure took "longer than usual" -- about thirty to forty-five minutes.  In the course of unwrapping the fabric, Harris experienced pain in both knees, directly beneath his kneecaps.  After exiting the hole, he immediately reported the pain to his supervisor, Frank Van Valkenburg.  Van Valkenburg advised him to walk around for a while and that if the pain did not subside, he would send him to the hospital.  After Harris took a break and walked around, the pain eased and he returned to work.

Harris testified that he had not experienced any pain in his knees prior to the February 4 incident.[1]  After the incident, Harris's knees hurt each time he worked from the described position under the machine, disengaging wrapped fabric.  He reported the continued pain to his supervisor and some of his co-workers.  On March 26, 1999, the pain in his knees increased, and his knees began to swell.  Two days later, he reported his condition to his supervisor and went to the plant hospital.

---

[1] Harris was involved in a motor vehicle accident on September 20, 1991, after which he experienced "popping and instability of" his left knee.  An MRI taken of the knee shortly after the accident showed no abnormalities.

Harris was treated at Piedmont PrimeCare East on March 28, 1999, where he reported that he had experienced pain in both knees since February 4, 1999, which had subsequently worsened. The attending physician's report reflected substantially the same history and a medical diagnosis, which related the pain to the incident at work on February 4, 1999.

Dr. Paul Settle of Piedmont PrimeCare completed a similar report on April 4, 1999 and indicated that Harris's injury "ar[o]se out of [his] employment . . . at work on 2/4/99 . . . ." In a subsequent report dated July 26, 1999, Dr. Settle again linked Harris's condition to his employment, concluding that Harris suffered from "chondromalacia patella, which was aggravated by his job, which required frequent working on his knees."

Harris was referred to Dr. Thomas C. Connolly, an orthopedic surgeon. In a report dated April 21, 1999, Dr. Connolly noted that Harris "ha[d] been doing a lot of kneeling on the floor and noted increased pain on 2-4-99 during his job kneeling." Dr. Connolly noted Harris's symptoms were consistent with bilateral patello-femoral syndrome and recommended that Harris use kneepads while at work. On May 12, 1999, Dr. Connolly completed an employer form where he listed a diagnosis of patello-femoral syndrome and stated that he could not determine whether the injury arose out of Harris's employment.

Dr. Connolly ordered an MRI, which he noted was basically normal and showed no evidence of a meniscal tear. In a report dated May 25, 1999, he stated, "of course Mr. Harris has no traumatic hx of his knees, basically just standing on the floor all day at Goodyear." Dr. Connolly concluded, "I doubt this is work related, however, due to the nature of the presentation as well as the MRI presentation."

Dr. George Aitken, another orthopedic surgeon, treated Harris on June 7, 1999. Dr. Aitken noted that Harris had "hurt himself back in January on the job reporting it and having to do a lot of work on concrete floors and kneeling." X-rays ordered by Dr. Aitken showed a medial meniscal tear as well as some degenerative disease.

Dr. Aitken performed arthroscopic surgery on Harris's left knee on June 29, 1999. During the surgery, he repaired a medial meniscal tear and a medial femoral condylar flap tear.

In September 30, 1999, Dr. Aitken wrote:

> Mr. Harris is aware he had arthritis in his knees before the injury on 2/4/99. On that date he had increased pain in his knees and probably caused or exacerbated meniscal tears in his knees that resulted in symptoms of pain.

On September 28, 1999, Dr. K. Thomas Wagner reviewed Harris's records at the request of Goodyear. Dr. Wagner concluded that Harris had a progressively degenerative arthritic process involving both knees, which was not work related

"because there is no evidence of any distinct injury or trauma which precipitated this." He wrote, "I think this is a gradual wear and tear type phenomenon and would not consider it work related."

Because of the injury to his knees, Harris sought compensation for his medical expenses and for lost wages for the periods of work he had missed. The deputy commissioner awarded benefits to Harris and, on appeal, the full commission affirmed the award. This appeal followed.

ANALYSIS

I.

Injury by Accident

In order to recover benefits for an injury under the Workers' Compensation Act, the employee must have suffered an "injury by accident arising out of and in the course of the employment." Code § 65.2-101. Whether an employee has suffered an "injury by accident" is a mixed question of law and fact. R & R Constr. Corp. v. Hill, 25 Va. App. 376, 378-79, 488 S.E.2d 663, 664 (1997). Findings of fact by the Workers' Compensation Commission will be upheld on appeal if supported by credible evidence. James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). However, whether those facts prove the claimant suffered an "injury by accident" is a question of law. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970). The commission's finding

on the legal question is not conclusive and binding upon us, but is properly subject to judicial review. See Hill, 25 Va. App. at 378-79, 488 S.E.2d at 664.

> [T]o establish an "injury by accident," a claimant must prove (1) that the injury appeared suddenly at a particular time and place and upon a particular occasion, (2) that it was caused by an identifiable incident or sudden precipitating event, and (3) that it resulted in an obvious mechanical or structural change on the human body.

Southern Express v. Green, 257 Va. 181, 187, 509 S.E.2d 836, 839 (1999); see also Combs v. Virginia Elec. & Power Co., 259 Va. 503, 508, 525 S.E.2d 278, 281 (2000).

Goodyear contends Harris did not prove an "injury by accident." Goodyear focuses on the period of time Harris worked when the injury occurred, and on the fact he was on his knees for some forty-five minutes. Proceeding from those facts, Goodyear contends the injury in question was gradually incurred, see, e.g., Kraft Dairy Group, Inc. v. Bernardini, 229 Va. 253, 329 S.E.2d 46 (1985), and that the incident claimed to precipitate the compensable injury was not sufficiently "bounded with rigid temporal precision" to meet the definition of "injury by accident." See, e.g., Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 864 (1989).

Goodyear's contention is refuted by two Virginia Supreme Court holdings, Green, 257 Va. 181, 509 S.E.2d 836, and Combs, 259 Va. 503, 525 S.E.2d 278. In both cases, the causative

"incidents" were not instantaneous but, rather, continued over a period of four hours and two hours, respectively.

In Green, the employee had worked for four hours stacking drinks in a walk-in cooler at a convenience store.  While working in the cooler, the employee developed chilblains, resulting from her exposure to the cold temperature in the cooler.  In finding that the employee had suffered an "injury by accident," the Virginia Supreme Court stated:

> The evidence in this case shows that Green's chilblains were not an "injury of gradual growth . . . caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm . . . ."  Instead, the chilblains were "the result of some particular piece of work done or condition encountered on a definite occasion . . . ."  In other words, Green's chilblains resulted from a single exposure to cold temperature on a definite occasion during the performance of a specific piece of work, i.e., an "identifiable incident." It was not caused by repeated exposures over a period of months or years.

Green, 257 Va. at 189, 509 S.E.2d at 841 (citations omitted).

In Combs, the employee had developed a severe headache during an aerobics class held on company property.  The employee was taken to the employer's employee health services "quiet room," where she was left unattended.  Two hours after she had been placed in the "quiet room," the employee was found covered in vomit, in a coma-like state.  The employee was taken to the hospital where doctors concluded she had suffered a brain

aneurysm.  In finding that the employee had suffered a

compensable "injury by accident," the Virginia Supreme Court

stated:

> Combs' injury is not the aneurysm itself.
> Instead, her injury is the aggravation,
> exacerbation and/or acceleration of the
> aneurysm.  That injury resulted from the
> alleged negligent emergency medical care, or
> lack thereof, that she received from
> Virginia Power and its EHS employees after
> she suffered a severe headache during the
> aerobics class.
>
>  *      *      *      *      *      *      *
>
> The particular time, place, and occasion of
> her injury was at the EHS "quiet room" in
> Virginia Power's Richmond office, during the
> two to three hours that elapsed from when
> she first developed the headache and was
> taken to the "quiet room" until she was
> transported to the hospital.  The
> identifiable or precipitating event was the
> alleged negligent emergency medical
> treatment that she received during this span
> of time.  Finally, Combs' paralysis and
> cognitive brain damage represent the
> mechanical or structural changes in her body
> that resulted from her injury.  Thus, all
> the requirements of an "injury by accident"
> are present in this case.

Combs, 259 Va. at 508-09, 525 S.E.2d at 281-82.

In this case, the commission found as established fact that

Harris sufficiently identified:  (1) the particular time, place

and occasion of the injury; (2) the identifiable incident which

caused the injury; and (3) a mechanical or structural change in

his body.  On February 4, 1999, while he was on his knees for

forty-five minutes pulling fabric loose, Harris experienced pain

in both knees.  As soon as he exited the hole, Harris reported the incident and the pain to his supervisor.  Harris also denied experiencing any pain in his knees prior to the incident on February 4.  The commission concluded that Harris's claim was not defeated by his inability to identify the specific piece of fabric which, when pulled, caused the injury.  See Hill, 25 Va. App. at 379-80, 488 S.E.2d at 665 (where employee felt soreness in his back while lifting numerous five-gallon buckets, "[t]he fact that the claimant did not or could not identify precisely which bucket or buckets he was lifting when the disc or discs herniated does not constitute failure to prove that an immediate or sudden event or events caused the discs to herniate").  It further noted that the medical testimony in the case, including that provided by Drs. Settle and Aitken, established that Harris's knee injury was due to the February 4, 1999 incident, the latter physician opining that the incident "probably caused or exacerbated meniscal tears in his knees that resulted in symptoms of pain."  Although Harris may have had pre-existing arthritis and a degenerative condition of his knees, the condition was materially aggravated as a result of the injury he sustained when he disengaged the wrap-up of fabric on February 4, 1999.  On that date, he suffered a meniscal tear that caused disabling pain in his knees for the first time.  Such an injury is compensable.  Olsten of Richmond v. Leftwich, 230 Va. 317, 319-20, 336 S.E.2d 893, 895 (an injury by accident which

materially aggravates or accelerates a pre-existing condition is compensable); see also Ohio Valley Constr. Co. v. Jackson, 230 Va. 56, 58, 334 S.E.2d 554, 555 (1985).

While the employer's physician and one of Harris's treating physicians provided opinions to the contrary, conflicting medical evidence is not sufficient to warrant the reversal of a commission decision. Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000). The commission gave little weight to the opinions because they were based on incomplete or inaccurate histories. Issues of weight and credibility are uniquely within the province of the commission, and we will not substitute our judgment for that of the trier of fact. City of Portsmouth Sheriff's Dept. v. Clark, 30 Va. App. 545, 553, 518 S.E.2d 342, 346 (1999); Dollar General Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996).

## II.

### Timely Notice of Accident

Code § 65.2-600(D) requires an employee to give written notice of an accident to the employer within thirty days of the occurrence of the accident. However, written notice is unnecessary if the employer has actual notice through a foreman or other superior officer. Newport News Shipbuilding & Dry Dock Co. v. Barnes, 32 Va. App. 66, 70, 526 S.E.2d 298, 300 (2000); Kane Plumbing, Inc. v. Small, 7 Va. App. 132, 138, 371 S.E.2d 828, 832 (1988). Additionally, compensation will not be barred

for failure to give timely notice unless the employer can prove it was prejudiced by such lack of notice. Code § 65.2-600(E). In this case, although Harris did not seek medical treatment until March 28, 1999, and did not file an accident report until that date, his supervisor, Frank Van Valkenburg, admitted that Harris immediately reported the incident and the injury to him on February 4, 1999. Thus, Harris provided timely notice of his injury. Additionally, Goodyear has made no allegation that it was prejudiced by the absence of timely written notice.

For the reasons stated, we affirm the decision of the commission.

<u>Affirmed.</u>