COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Petty and Alston
Argued at Chesapeake, Virginia


FOOD LION, LLC, AND
   DELHAIZE AMERICA INC.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0882-10-1                       JUDGE LARRY G. ELDER
                                                         MAY 24, 2011
LAURA OTEY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Dov M. Szego (William B. Pierce & Associates, PLLC, on briefs),
            for appellants.

            (Gregory E. Camden; Montagna, Klein, Camden LLP, on brief),
            for appellee.


        Food Lion, LLC, and its insurer, Delhaize America Inc. (hereinafter collectively

employer), appeal from a decision of the Workers' Compensation Commission (the commission)

awarding benefits to Laura Otey (claimant) for a shoulder injury.  On appeal, employer contends

the evidence fails to support the commission's conclusion that claimant met her burden of

proving her injury arose out of her employment.  We hold the evidence, viewed in the light most

favorable to claimant, was sufficient to support the award of benefits.  Thus, we affirm.

                                    I.  BACKGROUND[1]

        As of May 25, 2009, claimant worked for employer as a receiver.  Her responsibilities

included "deal[ing] with all the vendors and their products" and "order[ing] and stock[ing]"

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] As required by settled principles, we view the evidence in the light most favorable to
claimant, the party prevailing below.  See, e.g., Crisp v. Brown's Tysons Corner Dodge, Inc., 1
Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).

"certain things in the store" such as cigarettes, candy, and baby formula. Receiving vendors entailed admitting the vendor to the store, checking "product to the invoice," and either signing a check or signing the vendor's ticket for payment. When a vendor arrived that day with a pallet of beer, claimant determined "there was some product on the pallet . . . that [she was] not going to accept in the store." She so notified the delivery driver, and "[she and the driver] started moving around the [24-can] cases of beer, because the product [she] did not want was in the middle of the pallet." Claimant testified that such duties were a part of her job description.

Claimant and the driver spent "maybe ten minutes" moving the cases of beer, and when claimant moved what she estimated was her eighteenth case, she "felt a twinge in her [left] shoulder," which "got a little stiff" and "started to ache" and "feel[] bad." She moved two more cases, but her left shoulder "felt a little worse," "so [she] stopped completely" and "let the driver finish."

Claimant then "totaled out the vendor check" and went into the manager's office, where she planned to do some computer work. The manager and assistant manager were also in the room at the time. Claimant sat down at her work station, but because a vendor wanted to be let out, she stood up again. The manager and assistant manager got up and walked out in front of her, and as claimant began walking to the door, she encountered a chair that "[s]omeone [who] walked out of the office before [her] left in the walkway." Instead of walking around the chair in the walkway, claimant "went to put it in it[]s place" against the wall. Sometime during that motion, she began to feel immense pain in her left shoulder. This incident occurred about five to seven minutes after claimant had experienced the pain in her left shoulder while moving the cases of beer. Claimant called out for help to the store's manager, who had just left the room, and she phoned her husband to take her to get medical treatment. When claimant returned from

the emergency room, she told her supervisor she had hurt her shoulder earlier in the day when she was helping a vendor unload beer from a pallet.

Claimant was treated conservatively with an injection and pain medication, and when her symptoms did not improve, she was referred to Dr. Martin Coleman, an orthopedic surgeon, who diagnosed left shoulder impingement and recommended surgery. Surgery revealed a partial thickness tear of claimant's left rotator cuff, which Dr. Coleman repaired. On September 28, 2009, claimant returned to work without restrictions.

## II. ANALYSIS

In order for an injury sustained by an employee to be compensable under the Workers' Compensation Act (the Act), the employee must prove by a preponderance of the evidence "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." Chesterfield County v. Dunn, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990). Whether the claimant sustained an injury by accident is a question of fact. E.g., Grayson Sch. Bd. v. Cornett, 39 Va. App. 279, 288, 572 S.E.2d 505, 510 (2002).

To establish the injury occurred "at some reasonably definite time," an employee need not prove the precise instant at which the injury occurred. In Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 168, 543 S.E.2d 619, 621 (2001), for example, the employee experienced bilateral knee pain while working on his knees for a period of thirty to forty-five minutes. In holding this evidence was sufficient to support the commission's finding that the employee sustained an injury by accident, we relied on the Supreme Court's holding that a four-hour period of working in a walk-in cooler, during which prolonged exposure to the cold caused the injury, was sufficiently definite. Id. at 168-69, 543 S.E.2d at 622 (citing S. Express v. Green, 257 Va. 181, 189, 509 S.E.2d 836, 841 (1999)). The employee also need not establish an

immediate onset of symptoms. E.g., Turcios v. Holiday Inn Fair Oaks, 24 Va. App. 509, 515 n.1, 483 S.E.2d 502, 504 n.1 (1997) (involving a housekeeping employee who slipped and fell in a motel bathroom and first experienced pain when she later bent to make the room's bed). Compare id. with Ratliff v. Rocco Farm Food & Home Indemnity Co., 16 Va. App. 234, 429 S.E.2d 39 (1993) (affirming a decision of the commission finding no causal connection where the claimant, who had had intermittent low back pain since an accident in seventh grade, caught her falling co-worker, who had fainted, and did not experience back pain until twenty-four to forty-eight hours later).

A claimant must also prove that the injury "ar[ose] out of and in the course of the employment." Code § 65.2-101; see Cnty. of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989).

> In considering the "arising out of" prong, we do not apply the "positional risk" test, whereby simply sustaining an injury at work is sufficient to establish compensability. Rather, we adhere to the "actual risk" test, under which the injury comes within the Act only if there is a causal connection between the employee's injury and the conditions under which the employer requires the work to be done.

Hilton v. Martin, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008). "[A] claimant [must] show that the conditions of the workplace or that some significant work related exertion caused the injury." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989).

An injury does not arise out of the employment if "it 'cannot be fairly traced to the employment as a contributing proximate cause and . . . comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood.'" Vint v. Alleghany Reg'l Hosp., 32 Va. App. 60, 63-64, 526 S.E.2d 295, 297 (2000) (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)).

- 4 -

> Put another way, an injury is not compensable merely because it occurred during the performance of some employment duty if the act performed by the employee is not a causative hazard of the employment. Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of the employment.

Southside Va. Training Center v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000). For injuries occurring during such acts to be compensable, the action must be something "unusual, awkward, []or something that [the employee] was required to do on a repetitive basis." Id.

"'If the evidence shows that it is just as probable that the disability resulted from a cause which is not compensable, as it is that it resulted from one which is compensable, the claimant has not sustained the burden of [proving causation].'" Bergmann v. L & W Drywall, 222 Va. 30, 32, 278 S.E.2d 801, 802 (1981) (quoting Southall, Adm'r. v. Reams, Inc., 198 Va. 545, 548-49, 95 S.E.2d 145, 147-48 (1956)). However, where the evidence supports a finding that "a disability has two causes[,] one related to the employment and one unrelated[,] . . . it is proven that the employment is a contributing factor to the disability, [and] full benefits will be allowed." Id. at 32, 278 S.E.2d at 803.

Whether an injury arises out of the employment is a mixed question of law and fact and is reviewable on appeal. Barbour, 8 Va. App. at 483, 382 S.E.2d at 305. Where credible evidence supports the factual findings underlying such a determination, we must defer to those findings on appeal. See, e.g., Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (en banc).

Employer contends that neither claimant's lifting the cases of beer nor her moving the chair was an activity that "ar[ose] out of . . . [her] employment," as that language is used in Code § 65.2-101, and, thus, that she failed to prove the necessary causal connection between her employment and her shoulder injury. In the alternative, employer contends that even if lifting the cases of beer arose out of her employment, the evidence failed to prove by a preponderance

- 5 -

of the evidence that lifting the beer rather than moving the chair caused her injury. We hold the evidence, viewed in the light most favorable to claimant, supports the commission's award of benefits.

In making the necessary factual findings, the fact finder may accept some parts of a witness' testimony and reject others. Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). "The fact that a witness makes inconsistent statements . . . does not render his testimony . . . unworthy of belief. . . . It is firmly imbedded in the law of Virginia that the credibility of a witness who makes inconsistent statements on the stand is a question for the . . . trier of the facts . . . ." Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989). "If the trier of the facts sees fit to base the verdict upon [a witness' testimony impeached by that same witness' contradictory statements,] there can be no relief in the appellate court." Id. at 379, 382 S.E.2d at 259 (citing Simpson v. Commonwealth, 199 Va. 549, 557-58, 100 S.E.2d 701, 707 (1957)); see also Moore v. Commonwealth, 254 Va. 184, 491 S.E.2d 739 (1997) (in a criminal prosecution for statutory rape, holding the evidence failed to prove guilt *beyond a reasonable doubt* where the Commonwealth presented two different accounts of the essential facts through the victim's "conflicting testimony about the crime on *direct* examination" and recognizing that in "a case where inconsistencies have been developed during *cross*-examination," "those types of credibility issues are for the [fact finder] to decide" (emphases added)). Similarly, "determining the credibility of [different] witnesses who give conflicting accounts is within the exclusive province of the [fact finder] . . . ." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). "The commission's findings are binding even if the weight of the evidence is contrary to those findings." Kane Plumbing, Inc. v. Small, 7 Va. App. 132, 136, 371 S.E.2d 828, 831 (1988) (involving arguably

- 6 -

inconsistent statements a claimant made to medical providers concerning whether his injury resulted from cumulative trauma).

"'Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing.'" Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (quoting Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991)). A claimant is not required to produce a physician's medical opinion in order to establish causation. Id. at 176-77, 468 S.E.2d at 154-55. Causation of a condition may be proved by either direct or circumstantial evidence, including medical evidence or "the testimony of a claimant." Id. at 176, 468 S.E.2d at 154. "Where the diagnosis is clear but the medical evidence does not provide a sufficient causal link between the ailment and the employment, the commission may rely on the testimony of the claimant to establish this link." Lee Cnty. Sch. Bd. v. Miller, 38 Va. App. 253, 260, 563 S.E.2d 374, 378 (2002).

As to the issue of whether claimant's moving the cases of beer was an activity "arising out of" her employment, the commission implicitly found that it was, and the evidence, viewed in the light most favorable to claimant, supports that result. Although claimant's supervisor testified she was not required to help move merchandise off pallets, claimant testified such duties were, in fact, part of her job description.[2] The commission, as the finder of fact, was entitled to credit claimant's testimony over her supervisor's. The fact that claimant did not specifically list this duty when she gave a general description of her job, testifying only that it entailed "[c]hecking in vendors, ordering and stocking cigarettes, [and] fronting candy and baby formula," does not require a different result. To the extent claimant's statements conflicted, the commission, as the trier of fact, was entitled to conclude claimant's more specific testimony

_____

[2] Claimant's supervisor admitted other employees helped vendors move merchandise and that he, too, did so on "rare[]" occasions.

regarding moving the cases of beer was accurate. In the alternative, it could have concluded her statements did not conflict because moving the cases of beer was subsumed within her stated responsibility of "[c]hecking in vendors."

Further, even if claimant was not *required* to move the cases of beer, this does not bar her right to recovery.

> "If the voluntary act of an employee which causes an injury is sufficiently related to what the employee is required to do in fulfilling his contract of service, or is one in which someone in a like capacity may or must do in the interest of his employer's business, the fact that the employee was not actually required to perform the act will not impair his right to recover compensation." To bar an employee from the protection of Workmen's Compensation benefits because he voluntarily acted in his employer's interest would be to discourage constructive initiative, which is not a desirable result.

Lucas v. Lucas, 212 Va. 561, 564, 186 S.E.2d 63, 65 (1972) (quoting 7 Sneider, Workmen's Compensation § 1662(a), at 264 (1945)). Here, it was undisputed that claimant was required to "[c]heck[] in vendors" and assure that the stock they delivered was stock employer had ordered. In the course of fulfilling that duty, claimant discovered the pallet contained items employer had not ordered and would not accept, and claimant was in the process of helping the vendor remove those items from the pallet when she first felt pain in her shoulder. This activity, even if not required by employer, was not prohibited by employer and was in furtherance of employer's interest.

The evidence also supports the commission's finding that claimant's lifting the cases of beer was a contributing cause of her injury. A majority of the commission found Dr. Coleman "opined to a reasonable degree of medical certainty that *both* incidents[, lifting the cases of beer and moving the chair,] contributed to her rotator cuff tear." (Emphasis added). The record supports this finding. At Dr. Coleman's *de bene esse* deposition, employer's counsel read him claimant's deposition testimony, in which she described her shoulder's feeling "really weird and

- 8 -

achy" while moving the cases of beer and then exploding with pain when she moved the chair. Claimant's counsel then elicited from Dr. Coleman testimony that it was his "opinion to a reasonable degree of medical certainty that [claimant's] incidents at work related to the damage to her rotator cuff." Dr. Coleman's reference to "incidents" in the plural indicated his belief that the two events *in combination* caused her rotator cuff tear. Dr. Coleman later confirmed this opinion when claimant's attorney inquired, "Doctor, is it a combination of those two incidents that caused her rotator cuff tear?" and Dr. Coleman responded, "Yes."

That Dr. Coleman also testified "either one of [the incidents] could have done it" and that he "really couldn't pin it down"[3] does not require a different result. As detailed above, "the credibility of a witness who makes inconsistent statements on the stand is a question for the . . . trier of the facts," and "[i]f the trier of the facts sees fit to base the verdict upon [such] testimony there can be no relief in the appellate court." Swanson, 8 Va. App. at 378-79, 382 S.E.2d at 259.

The commission also relied on claimant's testimony as supporting its conclusion that moving the cases of beer contributed to her injury. Claimant's testimony, both on deposition and at the hearing before the deputy, was more detailed than the information relayed to Dr. Coleman during his deposition. Employer's counsel read to Dr. Coleman claimant's deposition testimony in which claimant stated that while she was "moving the beer, [her] shoulder started to ache, and it just felt really weird." Counsel did not read to Dr. Coleman claimant's more specific testimony in which she recounted she had spent about ten minutes moving cases of beer. She explained further in that testimony that when she moved a particular case of beer, which she estimated was the eighteenth case, she felt "a twinge in [her] shoulder," and she said this was when "[i]t started to ache and feel funny." Claimant said she "moved two more cases of beer"

_____

[3] Dr. Coleman testified that he "ha[d] a guess that the first one probably did it," indicating a leaning toward that conclusion.

- 9 -

after that but stopped because "it just was really starting to ache more." Claimant's supervisor testified that claimant, after returning from the emergency room on the day of the injury, reported to him that she had hurt her shoulder earlier in the day while helping a vendor unload beer. Dr. Coleman testified it was possible for a person with a partial thickness tear like claimant's to have the pain come on gradually after the tear and the fact that claimant did not experience "crippling pain" when she lifted the cases of beer and felt such pain only after moving the chair did not compel the conclusion that she tore the rotator cuff when she moved the chair.

This more specific testimony from claimant, viewed in light of Dr. Coleman's general observations, supported the possible scenario propounded by Dr. Coleman that claimant "tore [her rotator cuff] a little bit" while lifting the cases of beer and then "realized how much it hurt" "when she got to the chair and twisted the arm a different way."

Thus, we hold that Dr. Coleman's testimony about the medical nature of claimant's injury, coupled with claimant's report to her supervisor on the day of her injury and her testimony about how her pain developed, supported the commission's finding that claimant proved by a preponderance of the evidence that her repeated lifting of the heavy cases of beer, particularly the eighteenth case, contributed to her rotator cuff tear. The evidence, viewed in the light most favorable to claimant, established an identifiable incident which occurred at a reasonably definite time (within a span of five to seven minutes), resulted in a sudden mechanical or structural change in claimant's body (her partial rotator cuff tear), and arose, at least in part, out of her employment (as a result of her lifting and moving about twenty cases of beer).

## III.

For these reasons, we hold the evidence supported the commission's finding that claimant's injury was compensable.  Thus, we affirm the commission's award of benefits.

<u>Affirmed.</u>