COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, O'Brien and Fulton
Argued by videoconference


RHONDA ROBINSON

                                                                    MEMORANDUM OPINION* BY
v.        Record No. 0529-24-4                                      JUDGE RANDOLPH A. BEALES
                                                                    MARCH 18, 2025

LION GABLES REALTY LIMITED
 PARTNERSHIP, ET AL.


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            David M. Snyder (ChasenBoscolo, on brief), for appellant.

            A. Jacob Perkinson (Michael P. Del Bueno; Whitt Del Bueno Clark,
            on brief), for appellees.


        Rhonda Robinson appeals from a decision of the Virginia Workers' Compensation

Commission denying her claim for benefits.  The Commission found that the evidence in the

record either did not corroborate Robinson's testimony or directly contradicted her version of

events, and it concluded that Robinson failed to meet her burden of proving by a preponderance

of the evidence that she sustained a compensable injury.  On appeal, Robinson challenges the

Commission's credibility findings and the Commission's determination that she did not prove

that she had sustained a compensable injury by accident (as well as the Commission's conclusion

that she was, therefore, not eligible for a disability award or medical benefits).

                                            I.  BACKGROUND

        "On appeal from a decision of the Commission, 'the evidence and all reasonable

inferences that may be drawn from the evidence are viewed in the light most favorable to the

_____

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

prevailing party below.'" *Jalloh v. Rodgers*, 77 Va. App. 195, 200 n.2 (2023) (quoting *City of Charlottesville v. Sclafani*, 70 Va. App. 613, 616 (2019)). In this case, Robinson's employer, Lion Gables Realty Limited Partnership ("Lion Gables"), and her employer's insurance carrier, Sentry Casualty Co. ("Sentry"), were the prevailing parties before the Commission.

Robinson testified at the hearing before a deputy commissioner that on April 22, 2023, she sustained a right knee and leg injury when she tripped and fell at work. Robinson worked as an assistant community manager of a five-story residential apartment building in Fairfax County, Virginia, owned by Lion Gables Realty Limited Partnership. She described her role as "walking the property, making sure things are in the way that they're supposed to be." She would also "answer the phones. Answer emails. Deal with anything, people come in for tours, take them on tours." Robinson's manager, Dorothy Tramun, testified that Robinson "dealt a lot with the resident's ledgers" and "suing residents for nonpayment or sending it to the attorney's office" and that Robinson "would also tour prospects to see apartments." In addition, Robinson "might have to respond to a complaint" and "go outside to kind of look around the community." Robinson had her own separate office in the building, which was connected to a reception area.

Robinson testified that when she got to work between 9:20 a.m. and 9:30 a.m. on the morning of the incident, she noticed that "[t]here was a big box on the receptionist desk out in the office." She recounted, "I picked up the box off the outer desk and I carried it and was walking towards my office, which was an inner office. The door was shut." She noted that the box required both of her hands to carry, that it was approximately three feet wide, that it weighed between 10 and 15 pounds, and that she "couldn't see over the top of the box." Robinson then recounted, "I pushed the door open and as I began to walk, I tripped and fell . . . with the box in my hand." She emphasized, "I couldn't see directly what was in front of me," and she explained that she was moving "based on my knowledge of the floor plan." Robinson went on to state, "I

- 2 -

fell forward, and I fell into the desk, the corner of the desk, and I hit the floor." She claimed that "the corner of my knee and below the knee cap" hit the desk. Robinson then got up off the floor, she sat in her office chair, and she "continued to work." She pointed out that when she later tried to stand up, however, "my leg buckled. And then I started feeling excruciating pain as the time went on." When describing what had caused her to fall, Robinson opined, "I don't know what caused me to trip. I believe it was the door. The threshold."[1]

A few hours after the fall, at 11:24 a.m., Robinson texted Tramun, "Gm. Just fyi. I stumbled and fell. My right knee is swelling. Gertrud gave me tylenol and her cane. I may need to call an ambulance." Tramun testified that after receiving this text message, she spoke to Robinson multiple times that day by telephone regarding the fall. Robinson initially told Tramun, "I don't know what happened. I was walking and I just tripped." However, Robinson later told Tramun that "she was getting up from her desk and she hit her knee on her desk and fell." While describing her conversations with Robinson, Tramun recalled, "I did tell her that I had to contact our insurance and get a claim started. I did tell her that I would have to tell them both stories." Tramun noted that Robinson did not mention that she could not see where she was going due to the package that she was carrying — or that she was even carrying a package at all at the time of her fall. Rather, at the hearing before a deputy commissioner, Tramun stated, "This is my first time hearing of a package."

Robinson testified that later that same day, she sought medical treatment at Inova Fair Oaks Hospital. She recalled, "When I went into the emergency room and they gave me a Cat scan and they took pictures of my leg, they told me that it was broken and that I would need

---

[1] Photographs of Robinson's workplace were admitted into evidence at the hearing. The photographs showed that the flooring in the reception area consisted of carpet, wood, and tile, while Robinson's office was carpeted. There was also a metal threshold below the glass door in the doorframe that separated the reception area from Robinson's office.

surgery and that they are keeping me." Robinson underwent surgery the next day and remained in the hospital for several days. When asked about her additional medical treatment, she explained, "I have to have another MRI. I will need a knee replacement surgery. And I have physical therapy twice a week." In addition, when asked to describe her current symptoms, she stated, "I still have pain. I have to wear a brace. I have to be sedentary and it's mostly pain." She also pointed out that she takes prescription anti-inflammatory medications. Despite her physical limitations, however, Robinson acknowledged at the hearing, "I was able to walk into the building. Into the hearing room." She further acknowledged, "I drove here this morning."

Robinson's medical records from her emergency room visit were admitted into evidence — one of which provided that "[t]he patient is a 57-year-old female who fell while walking in her office." Another medical record indicated that Robinson "has been having a number of mechanical falls, in the recent past she fractured her wrist." In addition, one of Robinson's medical records stated that she presented to the emergency room "with right knee pain after mechanical fall. Patient states that she was walking into her office around 1015 when she lost balance fell on to right side[]." None of Robinson's medical records, however, mentioned her holding a package when she fell. During a follow-up visit in June 2023, Robinson's treating doctor noted, "Ms. Robinson is being seen for follow-up of the right tibial plateau fracture. She has been noncompliant with weightbearing restrictions, and comes in today without walking aid. Her exam is quiet and she has full range of motion without effusion. The patient declined x-rays. She will continue physical therapy and we will see her back in 4 weeks for evaluation."

Robinson filed a claim with the Commission seeking "temporary total disability benefits from April 22, 2023 through the present and continuing," "medical benefits for injuries to her right knee and right leg," and "protective permanent partial disability benefits." At the hearing before a deputy commissioner, the parties stipulated that "[t]here is an employee-employer

relationship" between Robinson and Lion Gables, that Robinson "sustained an injury by accident resulting in injuries to her right knee and right leg," and that, subject to Lion Gables's and Sentry's defenses, Robinson "was partially disabled due to the injury by accident from August 21, 2023 through the present and continuing." In response to Robinson's claim, Lion Gables and Sentry argued that Robinson's "injury by accident did not arise out of employment," that her injury did not "occur in the course of employment," that "there is no disability to the extent alleged," that "the medical records do not support the period of alleged disability," and that Robinson "failed to market her remaining work capacity."

Following the hearing on Robinson's claim, the deputy commissioner found that, although "the accident occurred in the course of her employment," Robinson's statements "demonstrate contemporaneous evidence of a speculative, unexplained accident." The deputy commissioner characterized Tramun's testimony as being "reliable and particularly significant" given her "amiable relationship" with Robinson — and he also characterized Tramun's testimony as being "more consistent with other evidence such as the text message and initial medical records." On the other hand, the deputy commissioner found several inconsistencies between Robinson's testimony and the other evidence. He noted that in conversations with Tramun, Robinson "never mentioned she tripped on the threshold as she entered her office, and she never implicated the presence of a package, much less that a package was a causative factor in the accident." He further noted that, although Robinson's "text message and initial medical records do not contradict her hearing testimony, they do not corroborate it." The deputy commissioner determined, "The multiple sources of contemporaneous evidence, none of which points to an accident arising out of employment, converge to the conclusion that the claimant did not meet her burden of proof, so her accident is not compensable." The deputy commissioner ultimately concluded that Robinson "did not prove her injury arose out of her employment."

On review, the Commission unanimously affirmed the decision of the deputy commissioner. The Commission found that, although Robinson "testified to a series of events [that], if believed, would lead to a finding that her injury arose out of her employment," the other evidence in the record "either does not corroborate the claimant's testimony or directly contradicts her version of events." Noting that the deputy commissioner's decision "clearly turned on the credibility of the witnesses," the Commission found that the deputy commissioner did not err "in crediting the testimony of the employer's witness as well as in considering the other evidence in the record to determine the claimant failed to meet her burden of proof. Having reviewed the same evidence, we are similarly unpersuaded." The Commission opined that it "should, in most instances, defer to the credibility determinations of the Deputy Commissioner in regard to witnesses that the Deputy Commissioner has been able to observe firsthand and from whom the Deputy Commissioner has formed impressions."[2] The full Commission "defer[red] to the Deputy Commissioner's decision" on the credibility determinations of the witnesses and then affirmed the deputy commissioner's decision in the case. Robinson now appeals to this Court.

---

[2] In a concurring opinion, one of the commissioners agreed with the majority's conclusion that Robinson "did not meet her burden of proof." However, Commissioner Marshall took issue with the majority's statement that "the Commission should, in most instances, defer to the credibility determinations of the Deputy Commissioner" because that statement "is an over-generalization that arguably conflicts with our authority to hear cases de novo" and "is contrary to numerous Court of Appeals of Virginia opinions holding that we are not bound by a Deputy Commissioner's credibility determinations." Commissioner Marshall did not agree with the majority that the Commission "should characterize every Deputy Commissioner's finding as being based upon credibility and as a necessary adjunct adopt a modified standard of review" — and he emphasized that, "[e]xcept for pure questions of law, every factfinder has to make judgments about the weight of evidence which may, to varying degrees, implicate witness credibility."

## II. ANALYSIS

On appeal, Robinson argues, "The Full Commission erred in affirming the credibility findings of the Deputy Commissioner." She further argues, "The Full Commission erred in affirming the finding that Ms. Robinson did not prove she sustained a compensable injury by accident." In addition, Robinson contends, "The Full Commission erred in denying Ms. Robinson's claim for temporary total disability from April 22, 2023 through October 1, 2023 and a lifetime medical award for the right leg injury."

"The Virginia Workers' Compensation Act requires that an injury by accident 'aris[e] out of and in the course of the [claimant's] employment' to be compensable." *City of Charlottesville*, 70 Va. App. at 618-19 (alterations in original) (quoting Code § 65.2-101). It is well established that "if an injury 'cannot fairly be traced to the employment as a contributing proximate cause,' the injury is not compensable because it did not 'arise out of' the claimant's employment." *King v. DTH Cont. Servs.*, 69 Va. App. 703, 713 (2019) (quoting *Stillwell v. Lewis Tree Serv., Inc.*, 47 Va. App. 471, 477-78 (2006)). "In determining whether an injury arises out of employment, 'Virginia employs the actual risk test.'" *Norris v. ETEC Mech. Corp.*, 69 Va. App. 591, 597 (2018) (quoting *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000)). "Under the actual risk test, the general rule is that a claimant's injury arises out of the employment 'if the manner in which the employer requires the work to be performed is causally related to the resulting injury.'" *Id.* at 598 (quoting *Southside Va. Training Ctr.*, 33 Va. App. at 828). "The causative danger must be peculiar to the work and not common to the neighborhood." *Id.* (quoting *Bernard v. Carlson Cos.–TGIF*, 60 Va. App. 400, 406 (2012)). Thus, "[s]imple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment." *Southside Va. Training Ctr.*, 33 Va. App. at 829.

"A claimant has the burden of proving by a preponderance of the evidence, and not by mere conjecture or speculation, that an injury was the result of an accident which arose out of and in the course of the employment." *Winegar v. Int'l Tel. & Tel.*, 1 Va. App. 260, 261 (1985). To meet that burden, "[t]he claimant must prove, by a preponderance of the evidence, that he sustained a compensable injury." *City of Charlottesville*, 70 Va. App. at 619. "In order to be compensable, however, the injury 'must also arise out of the employment; the injury must be caused by the conditions of the workplace.'" *Vint v. Alleghany Reg'l Hosp.*, 32 Va. App. 60, 63 (2000) (quoting *Plumb Rite Plumbing Serv. v. Barbour*, 8 Va. App. 482, 483 (1989)). This burden includes showing "why and how the accident happened." *Lysable Transp., Inc. v. Patton*, 57 Va. App. 408, 419 (2010) (quoting *Gossett v. Jackson*, 249 Va. 549, 552-53 (1995)). It is well settled that "if the evidence does not prove by a preponderance 'how the accident happened,' it is by definition unexplained and thus speculative" — and, therefore, not compensable. *Id.* (quoting *Pinkerton's, Inc. v. Helmes*, 242 Va. 378, 381 (1991)).

"Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review *de novo* on appeal." *Blaustein v. Mitre Corp.*, 36 Va. App. 344, 348 (2001); Code § 65.2-706(A). "The Commission's factual findings, if supported by credible evidence, are binding on appeal." *Loudoun Cnty. v. Richardson*, 70 Va. App. 169, 175 (2019). In addition, the Commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." *Layne v. Crist Elec. Contractor, Inc.*, 64 Va. App. 342, 344 (2015) (quoting *McKellar v. Northrop Grumman Shipbuilding Inc.*, 63 Va. App. 448, 451 (2014)). "This principle applies 'even [if] there is evidence in the record to support a contrary finding.'" *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019) (alteration in original) (quoting *City of Waynesboro v. Griffin*, 51 Va. App. 308, 317 (2008)). Indeed, the Commission is "free to decide which evidence [is] more credible and

should be weighed more heavily." *Thompson v. Brenco, Inc.*, 38 Va. App. 617, 624 (2002). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). "'[W]hether those facts prove the claimant suffered an "injury by accident" is a question of law' which this Court reviews *de novo*." *City of Charlottesville*, 70 Va. App. at 618 (quoting *Goodyear Tire & Rubber Co. v. Harris*, 35 Va. App. 162, 168 (2001)).

In this case, Robinson testified that she sustained a right knee and leg injury when she tripped and fell at her workplace while carrying a box that she could not see over. She claimed that "the corner of my knee and below the knee cap" hit the desk during her fall. However, at the hearing, Robinson admitted, "I don't know what caused me to trip. I believe it was the door. The threshold." Several hours after her fall, Robinson texted her manager, Dorothy Tramun, "Gm. Just fyi. I stumbled and fell. My right knee is swelling. Gertrud gave me tylenol and her cane. I may need to call an ambulance." Tramun testified that she spoke to Robinson multiple times on the day of Robinson's fall. Tramun — who stated that she "had a good relationship, both personal and professional," with Robinson — recalled that Robinson initially told her, "I don't know what happened. I was walking and I just tripped." However, Robinson later told Tramun that "she was getting up from her desk and she hit her knee on her desk and fell." Tramun told Robinson that she would have to tell the insurance company "both stories." Tramun also pointed out that Robinson did not mention that she could not see where she was going due to the package that she was carrying — or that she was even carrying a package at all at the time of her fall. In fact, Tramun stated at the hearing that "[t]his is my first time hearing of a package."

In addition, Robinson's medical records provided that she "fell while walking in her office" and that she "has been having a number of mechanical falls." Her medical records also

indicated that she presented to the emergency room "with right knee pain after mechanical fall" and that "she was walking into her office around 1015 when she lost balance fell on to right side[]." However, none of Robinson's medical records mentioned that she was holding a package when she fell — or even how she actually fell while walking.

In reviewing the testimony and evidence, the Commission properly recognized that Robinson, as the claimant, bore the burden of proving by a preponderance of the evidence that she sustained a compensable injury — and that her injury arose out of and in the course of her employment. Robinson's burden included showing "why and how the accident happened." *Lysable Transp., Inc.*, 57 Va. App. at 419 (quoting *Gossett*, 249 Va. at 552-53). The full Commission, like the deputy commissioner, found that Robinson "testified to a series of events [that], *if believed*, would lead to a finding that her injury arose out of her employment." (Emphasis added). However, the full Commission, like the deputy commissioner, simply did not believe Robinson's testimony because it was inconsistent with and was not corroborated by her statements and her medical records contemporary to her injury. *See Thompson*, 38 Va. App. at 624 (noting that the Commission is "free to decide which evidence [is] more credible and should be weighed more heavily"). Because the Commission's findings of fact regarding the inconsistencies and lack of corroboration in Robinson's testimony were supported by credible evidence in the record, those findings of fact are binding on appeal as we do not retry the facts that were before the Commission.

Furthermore, the record before this Court on appeal supports a determination that Robinson failed to prove, by a preponderance of the evidence, that she sustained a compensable injury that arose out of her employment with Lion Gables. To show why and how the accident happened, Robinson had to prove more than the mere existence of a workplace risk, such as an uneven floor. As this Court has previously held, "[s]imple acts of walking, bending, or turning,

without any other contributing environmental factors, are not risks of employment." *Southside Va. Training Ctr.*, 33 Va. App. at 826. It follows then that a condition of Robinson's workplace would have needed to *cause* her fall. *See Central State Hosp. v. Wiggers*, 230 Va. 157, 159 (1985) (emphasizing that the claimant must demonstrate "a *causal connection* between the conditions under which the work is required to be performed and the resulting injury" (emphasis added) (quoting *Richmond Mem. Hosp. v. Crane*, 222 Va. 283, 285 (1981))). Given that Robinson's testimony and the evidence failed to provide the necessary causal connection, the cause of her fall remained speculative. Consequently, Robinson failed to meet her burden of proving a compensable injury by accident, and the full Commission did not err in holding that Robinson's injury was not compensable under the Virginia Workers' Compensation Act.[3]

---

[3] This Court has repeatedly stated, "In the workers' compensation context, established principles provide that the Workers' Compensation Commission is not bound by a deputy commissioner's prior findings on questions of witness credibility." *McNamara v. Va. Empl. Comm'n*, 54 Va. App. 616, 624 (2009) (citing *Bullion Hollow Enters., Inc. v. Lane*, 14 Va. App. 725, 729-30 (1992)); *see also Turcios v. Holiday Inn Fair Oaks*, 24 Va. App. 509, 515 (1997) ("The commission is not constrained to accept the credibility findings of a deputy commissioner. However, the decision to reverse such findings cannot be rendered arbitrarily. The record must reflect a reasonable basis for the commission's different conclusion."). Indeed, "while deference is generally given to the deputy commissioner's credibility finding, the full commission has authority to assess the credibility of a witness." *Grayson Sch. Bd. v. Cornett*, 39 Va. App. 279, 286 n.2 (2002); *see also Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 383 (1987) (noting that "if the deputy commissioner's determination of credibility is based on the substance of the testimony and not upon the witness' demeanor and appearance, such a finding is as determinable by the full commission as by the deputy"). Here, Commissioner Marshall correctly pointed out the majority's misstatement that "the Commission should, in most instances, defer to the credibility determinations of the Deputy Commissioner," and the majority's interpretation of and reliance upon *Va. Real Estate Bd. v. Kline*, 17 Va. App. 173 (1993), is inapposite in the workers' compensation context. However, the majority's misstatement about the applicable standard of review governing the full Commission's review of the deputy commissioner's credibility findings does not change the outcome in this case.

- 11 -

### III. CONCLUSION

In short, the evidence in the record before this Court on appeal supports the

Commission's determination that Robinson failed to prove that she had sustained a compensable

injury by accident.  Therefore, we do not disturb the Commission's decision.

*Affirmed.*